# SUPREME COURT.

## In the Matter of Benjamin W. Briscoe.

*Habeas corpus — extradition from one state to another — arrest on civil process.*

Where a person is under arrest and in the custody of the sheriff of the county on civil process, he can only be discharged by the court on *habeas corpus* for one of the causes specified in the statute (3 *R. S.* [*6th ed.*], *p.* 878, *sec.* 56), notwithstanding that the governor of the state has issued his mandate to the sheriff to deliver him up to another state, upon extradition proceedings and the requisition of the governor of the latter state.

Where the governor of the state exercises the power conferred upon him by the federal constitution, and the act of congress of February 12, 1793, which has been repeatedly held constitutional by the United States courts, and which makes it the duty of the governor to cause to be arrested and delivered up any person charged with crime in another state, who has fled to this state, upon the demand of the executive of such other state, such act of the governor is not void for want of power; but, on the contrary, in a proper case, both the constitution and the law of·congress imposes upon him a grave duty which every moral reason requires him to perform.

Where a party is detained in one state, because the laws of that state have claims upon him, he cannot be extradited and taken to another state before the justice of the state which holds him has first been satisfied.

That is, the right of the state demanding the alleged fugitive, in order that he may be compelled to answer to its laws, is not superior to that of the state which holds him for a similar purpose.

*Chambers, New York, September 5, 1876.*

APPLICATION by A. M. Perkenson, sheriff of Fulton county, state of Georgia, by *habeas corpus* to procure the delivery to him of Benjamin W. Briscoe, an alleged fugitive from justice in Georgia, and ordered to be surrendered to him by the governor of this state, upon the demand of the governor of

Georgia, and now held and detained by the sheriff of the city and county of New York by an order of arrest made by Mr. justice DONOHUE, in a civil action, pursuant to section 179 of the Code.

*Ambrose H. Purdy*, for sheriff of Fulton county, Georgia, and the application.

*William C. Trull*, for plaintiffs in the civil action, who procured the order of arrest, and opposing application.

*Mr. Bookstaver*, for Wm. C. Conner, sheriff of the city and county of New York.

WESTBROOK, *J.*—On the 3d day of July, 1876, Briscoe was arrested by the sheriff of the county of New York, in a civil action commenced in the supreme court of this state, upon an order of arrest made and issued by Mr. justice DONOHUE, directing the said sheriff to arrest Briscoe, and hold him to bail·in the sum of $7,000. Briscoe is now held by such sheriff under such order of arrest, and one subsequently issued by Mr. justice WESTBROOK, in another action for the sum of $1,800, in default of bail, and the sheriff returns both of said .orders as the causes for the detention of said Briscoe.

On the 8th day of July, 1876, the governor of Georgia issued his requisition to the governor of the state of New York requesting him to return Briscoe to the state of Georgia, in accordance with the laws of the United States, and for such purpose to deliver him to A. M. Perkenson, the petitioner. Accompanying the requisition of the governor of Georgia were the following papers :

1. An affidavit of Perkenson, bearing date July 8, 1876, that Briscoe was not in the state of Georgia, but was in the state of New York.

2. A warrant for the arrest of Briscoe, of the date of said 8th of July, 1876.

3. A return of C. C. Green, deputy sheriff of Fulton county, Georgia, that Briscoe is not to be found in that county.

4. A copy of an indictment against A. J. West, Shelton Edwards and Benjamin W. Briscoe, charging that the said persons, being partners as commission merchants, under the firm name of West, Edwards & Co., were intrusted by the Holston Salt and Plaster Company, a corporation under and by the laws of the state of Virginia, with 250 sacks of salt, of the value of $500, and had then and there, fraudulently and without the consent of the company, converted the proceeds of the said salt to their own use, and had failed to pay over to said company, on demand, such proceeds, contrary to the laws of the said state of Georgia.

5. A certificate of one Collins, clerk of the court of Fulton county, Georgia, that the copy of the indictment forwarded was a true copy.

6. A certificate of J. C. People, judge of said court, that Collins, who certified to the correctness of the copy indictment, was the clerk of such court.

7. The certificate of the governor of Georgia.

Upon the foregoing papers, the governor of the state of New York issued his mandate on the 22d of July, 1876, to the sheriff and other officers of the state of New York, to arrest and secure Briscoe in the said state and deliver him back to the state of Georgia.

The petitioner, Perkenson, having demanded Briscoe from the sheriff of the county, who holds him under the orders of arrest before mentioned, upon the refusal of such sheriff to surrender him, applies to this court, upon *habeas corpus*, to order Briscoe's surrender by such sheriff to him, to the end that he may be taken to Georgia, there to answer the indictment found against him.

The statement of the case, which has been given at length for the proper understanding of the points made, shows that questions of unusual interest and grave importance are pre-

sented, so grave and important that however pressing the need of a speedy decision, the court did not feel at liberty to dispose of them upon the argument, but reserved them for a more deliberate and careful examination.  Such examination has been very much aided by the elaborate briefs presented by the counsel favoring and opposing the application, as well as by the lucid and learned oral arguments, which were heard with very great profit and pleasure.  The results of such examination as we have been able to give will now be stated, and the various questions considered in the order they were presented.

From the return to the writ of *habeas corpus* it appears that Briscoe is in custody by virtue of civil process from " a court legally constituted," and he therefore " can only be discharged " upon this proceeding for one of the causes specified in the statute (3 *R. S.* [*6th ed.*], *p.* 878, *sec.* 56).  A reference to that statute will show that for no such cause as is here presented has the court power to discharge Briscoe from the custody of the sheriff, which must be done before he can be delivered to the custody of the agent of the state of Georgia. With these plain provisions in the *habeas corpus* act, limiting the power of the court when a party is detained by civil process, it is useless to examine the point whether the writ is ever maintainable to deliver a party from one imprisonment in order to transfer him to another.  It is enough for the purposes of this proceeding that the statute has specified the cases in which a party detained, as Briscoe is, can be discharged, and has placed a prohibition upon the power to release by further declaring that only in one of the defined cases can the prisoner be released.  For this reason alone, then, the writ must be dismissed and the prisoner remanded, and perhaps discussion should end here, but the case involves several other questions of so interesting a character that their examination also may be profitable.

It is further claimed by the counsel objecting to the discharge of Briscoe from the custody of the sheriff and his

delivery to the agent of the state of Georgia, that the governor of this state has no power to issue his warrant for the arrest and extradition of a fugitive from the justice and jurisdiction of another state, except by proceedings initiated through the judiciary, in conformity with chapter 350 of the Laws of 1839 of this state. It is argued that subdivision 2 of section 2 of article 4 of the constitution of the United States, which declares "a person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime," is simply declaratory of an obligation which one state owes to another under the federal constitution, and that it imposes no duty and confers no power upon the executive of the state within which the fugitive shall be found. Without legislation, then, it is claimed that the governor of this state had no power to act, and that the act of congress of February 12, 1793, which makes it the duty of the executive authority of the state to which the person charged with crime has fled, on the demand of the "executive authority of any state in the union, or of either of the territories north-west or south of the river Ohio," * * * "to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear," is unconstitutional and void, because congress has no power to impose duties upon the governor of any state; or, at most, that the act of congress aforesaid should be so construed as simply to authorize the executive of the state to initiate proceedings before the judiciary, in conformity with the state law of 1839 before referred to (*chap.* 350, *Laws of* 1839). The court is not insensible to the force of the reasoning sustaining this view, but the point has been so fully and entirely adjudged the other way that original reasoning must end.

In the case of *Prigg* agt. *The Commonwealth of Pennsylvania* (16 *Peters*, 539) the supreme court of the United States held that the act of 1793 was constitutional, and that a state can pass no law hindering or obstructing its execution. The main opinion of the court is pronounced by Mr. justice STORY, and is concurred in by a majority of the court. That opinion holds that congress alone has power to legislate upon the subject, and that state laws, even when in aid of the provision of the constitution, are void. Whilst some of the other judges do not go to this extent, yet they all agree that the act of the state of Pennsylvania, under which Prigg was indicted, tried and convicted, was unconstitutional and void, because in conflict with the federal constitution and the act of 1793.

In *Commonwealth of Kentucky* agt. *Dennison, Governor of the State of Ohio* (24 *How.*, 66), the validity of the act of 1793 was again before the same tribunal. It was an application by the state of Kentucky "for a rule on the governor of Ohio to show cause why a mandamus should not be issued by the court commanding him to cause Willis Lago, a fugitive from justice, to be delivered up, to be removed to the state of Kentucky, having jurisdiction of the crime with which he is charged." The matter was most fully and elaborately argued, and the opinion of the court, in which all the judges concur, is delivered by chief justice TANEY. In a most clear and able argument he holds that whilst the constitution of the United States does not specify upon what officer of a state the demand for the fugitive must be made, yet for the reasons which he gives (*see pages* 102, 103), "the conclusion is irresistible" that the clause in the constitution aforesaid "gives the right to the executive authority of the state to demand the fugitive from the executive authority of the state in which he is to be found; that the right given to demand implies that it is an absolute right, and it follows that there must be a correlative obligation to deliver, without any reference to the character of the crime charged, or to the policy or laws of the

state to which the fugitive has fled." He further holds that congress had full power to legislate upon the question, and that the act of 1793 is constitutional and valid; but, whilst it is the clear moral duty of the governor of the state upon which the demand for the fugitive is made to comply with such demand, yet " the act does not provide any means to compel the execution of this duty, nor inflict any punishment for neglect or refusal on the part of the executive of the state; nor is there any clause or provision in the constitution which arms the government of the United States with this power." The learned judge, after further arguing that the executive of a state is morally and justly bound to comply with the demand, again expressly declares : " The performance of this duty, however, is left to depend upon the fidelity of the state executive to the compact entered into with the other states when it adopted the constitution of the United States and became a member of the union. It was so left by the constitution, and, necessarily, so left by the act of 1793." And the opinion concludes thus : " But if the governor of Ohio refuses to discharge this duty, there is no power delegated to the general government, either through the judicial department or any other department, to use any coercive means to compel him. And upon this ground the motion for the mandamus must be overruled."

As the governor of this state has, in the case before us, exercised the power conferred upon him by the federal constitution and the act of congress, the conclusion from the foregoing cases manifestly is, that the act which he has assumed to perform is not void for want of power ; but, on the contrary, in a proper case, both the constitution and the law of congress imposed upon him a grave duty which every moral reason required him to perform.

In the examination of the other points made by the counsel for the creditors, in opposition to the discharge of Briscoe, it is objected on the part of the state of Georgia that as the power and duty of extradition is conferred upon the gov-

ernor of a state, that when the propriety and right of such extradition have been determined by him, his judgment cannot be reviewed by the judiciary. This point now urged upon the present application has once before been made by the governor himself, *In the Matter of Nathan Ullman*, in these words : "I deny, with great respect, the right of the court to issue said writ of certiorari to me, or to review, directly, my action in discharging the duty imposed upon me by the constitution of the United States with respect to the surrender of fugitives from justice." As the question is an important one, and has been respectfully made, it becomes us to examine it with the care due to its importance and the high official station of the party making it.

If the position now taken had not been judicially overthrown, as we shall presently show it has been, whilst intending no disrespect to the governor of this state, we should be constrained to assert the power and duty of the court to examine and inquire into the cause of the detention of a prisoner even though the warrant which detains him is issued by the governor of the state, as he claims, under the power conferred upon him by the national law. It has been truly said (*Bouvier's Law Dictionary*, vol. 1, *p*. 651) of the writ of *habeas corpus :* "This is the most famous writ in the law, and having for many centuries been employed to remove illegal restraint upon personal liberty, no matter by what power imposed, it is often called the great writ of liberty." The *habeas corpus* act (3 *R. S.* [*6th ed.*], 875, *sec.* 35) expressly enacts the common-law power of the writ and declares : "Every person committed, detained, confined or restrained of his liberty within this state for any criminal or supposed criminal matter, or under any pretense whatever, except in the cases in the next section specified, may prosecute a writ of *habeas corpus* or of certiorari, according to the provisions of this article, to inquire into the cause of such imprisonment or restraint." As the next section does not take the case of a person sought to be extradited by the mandate of the gover-

nor out of the operation of the statute, it necessarily follows that the court has power to inquire and must "inquire into the cause of such imprisonment or restraint." The executive is not infallible. He may err and issue his warrant when he ought not to issue it, and if the citizen has no right to prosecute this writ, but must submit to the executive order, then it is clear that we have one officer in a state organized under a republican form of government who can hold at pleasure and remove at his will beyond the jurisdiction of the state every citizen, and whose action cannot be questioned or reviewed. This is simple tyranny, and the statement of the proposition would, we are certain, cause the present executive, as well as the court, to reject it as entirely unsound.

We are fortunately, however, not to dissent from the opinion of the chief executive of the state upon our own judgment. *In the Matter of Manchester* (5 *California*, 237), it was held: "The judiciary have jurisdiction by *habeas corpus* to investigate cases where a party is arrested as a fugitive from justice, escaped from another state. The courts possess no power to control the executive discretion in surrendering fugitives from justice, nor can they compel a surrender in such case, yet the executive having acted, that discretion may be examined into in every case when the liberty of the subject is involved." The court of appeals of this state (*In the Matter of Lawrence*, 56 *N. Y.*, 182) has decided the very question, and there is, consequently, no room for argument. That court has declared: "The courts have jurisdiction to investigate by writ of *habeas corpus*, and to examine the grounds upon which the executive warrant for the apprehension of an alleged fugitive from justice from another state is issued; and, in case the papers are defective and insufficient, to discharge the prisoner" (*See also Hurd on Habeas Corpus* [2d ed.], 593, note 1; *In re Heinrich*, 5 *Blatchford*, 414).

With the authorities cited fully sustaining such action, we proceed to examine the papers upon which the executive warrant issued.

Briscoe was indicted in the state of Georgia for the fraud-
ulent conversion of property intrusted to him, as a commis-
sion merchant, to be sold. As the act of 1793 makes the
evidence of the right to demand the fugitive "the copy of
the indictment found," and such copy was produced to the
governor of this state, it is unnecessary to examine the ques-
tion whether or not the alleged offense charged in the indict-
ment is one known to the laws of our state, and if not,
whether or not proof should have accompanied the papers
showing that it was a crime under the laws of the state of
Georgia. *In the Matter of Lawrence* (56 *N. Y.*, 182), before
referred to, the court of appeals (*page* 188), in demanding
evidence that the alleged offense charged in the affidavit was
a crime under the laws of Michigan, put it upon the ground
that it did "not appear that an indictment had been found
against the relator," and "the fact" (*page* 191) "that an
inferior magistrate has issued a warrant of arrest upon the
same proof as was presented to the executive of this state,
does not justify the inference that a legal crime was charged
in the affidavits." As the case before us is directly within
the law of congress, our conclusion is that the indictment
produced is sufficient evidence that the party is charged with
a crime known to the laws of Georgia, and that no valid
exception to the order of the governor exists upon this ground.

We are now brought to the consideration of the remaining
question, and that is: When a party is detained in one state,
because the laws of that state have claims upon him, can such
person be extradited and taken to another state before the
justice of the state which holds him has first been satisfied?
In other words: Is the right of the state demanding the
alleged fugitive, in order that he may be compelled to answer
to its laws, superior to that of the state which holds him for
a similar purpose? If it is, then state comity is above state
self-preservation, and the obligation of man to his fellows is
superior to that which he owes to himself. There can be no
middle ground upon the question before us. The constitu-

tion of the United States, if it means that the surrender must be made, though the state holding the fugitive has demands upon him, must require his delivery in every case, without regard to the right of the state in which he is. If he is then detained for murder committed within its jurisdiction, he must be surrendered though demanded to answer elsewhere for simple petit larceny. This extreme case is put to illustrate the danger of the position taken. No discretion is committed to the executive to weigh the force of the demand and the cause of detention, and to award or withhold the order of extradition according as he may judge the gravity of the claim upon the fugitive may be greater or less in one state than in the other. If the federal constitution places the rights of the state making the demand above those of that upon which it is made, it must then in every case be obeyed; but if, on the other hand, the state which holds him is only bound to surrender, when its own laws do not detain him, then in no case can he be delivered until the justice of these laws has been satisfied. If the question had not been decided, and arguing from the duty which every state owes to itself and to its citizens, which must, as a rule of conduct for its own guidance, be paramount to the duty which it owes to another and its citizens, we should hold that the national constitution only imposes the duty of surrender when the laws of the state upon which the demand is made have no claims upon the person of the alleged fugitive. Adjudged cases, however, foreclose discussion.

In *Ex parte Dorr* (3 *How.*, 103) the supreme court of the United States held (*page* 105): "Neither this nor any other court of the United States, or judge thereof, can issue a *habeas corpus* to bring up a prisoner who is in custody under a sentence or execution of a state court, for any other purpose than to be used as a witness; and it is immaterial whether the imprisonment be under civil or criminal process. As the law now stands, an individual who may be indicted in a circuit court for treason against the United States is beyond the

Matter of Briscoe.

power of federal courts and judges if he is in custody under the authority of a state."

That the case before us is not exactly that of Dorr, we concede. Dorr sought to be brought before the federal tribunal, in order that he might review the action of the state court. The case is, however, controlling authority to show that a state holding a party for a breach of its laws cannot, even when such person is held by civil process, be compelled to surrender him to another jurisdiction to be tried for treason, the greatest offense known to the law, the duty of surrender in such a case being certainly equal in a moral, and probably in a legal point of view, to that which one state owes to another under the federal compact.

The identical question was, however, before the supreme court of New Jersey (*In Matter of Troutman*, 24 *Zabriskie*, 634). Troutman was detained by the sheriff of Monmouth county, New Jersey, under an arrest made by force of a *capias ad respondendum* (a writ for which an order of arrest, with the accompanying summons, is a substitute, performing in a case in which an arrest is proper the same office), and the aid of the court was sought to deliver him from the custody of such sheriff, that he might be taken to the state of Pennsylvania, upon the requisition of its governor, there to answer for a crime. The court (POTTS, J.), held: "If a fugitive from justice, for whose delivery a requisition is made by the executive of the state from which he is such fugitive, be in actual confinement on criminal or civil process in this state, he cannot be delivered up. The constitution and laws of the United States only refer to fugitives at large. In such case the requisition should be lodged with the sheriff, whose duty it would be, upon the prisoner's discharge from his previous arrest, to detain him thereon until notice could be given to the party presenting the requisition." With the reasoning of judge POTTS in this case our own judgment is fully satisfied, and it is identical with that which governed our own conclusion, and which was hereinbefore given prior to reading that of the

learned judge who sustains us. The question was directly before him, and the conclusion reached is to us very satisfactory.

In *Taylor* agt. *Taintor* (16 *Wallace*, 366), the supreme court of the United States, per SWAYNE, J. (*pages* 370, 371), say: " Where a demand is properly made by the governor of one state upon the governor of another, the duty of surrender is not absolute and unqualified. It depends upon the circumstances of the case. If the laws of the latter state have been put in force against the fugitive, and he is imprisoned there, the demands of those laws may first be satisfied. The duty of obedience then arises, and not before. In the case of Troutman, cited *supra*, the accused was imprisoned in a civil case. It was held that he ought not to be delivered up until the imprisonment had legally come to an end. It was said that the constitution and law refer to fugitives at large, in relation to whom there is no conflict of jurisdiction."

With these cases for our guidance it would, in our opinion, be grossly improper for this court to aid the executive warrant by the release of the prisoner. There is no pretense that the arrest and detention of Briscoe is by collusion with him, but, on the contrary, as the same counsel who represent him in the civil action are prosecuting this writ for his delivery to the state of Georgia, and as Briscoe himself is willing to waive all informalities in the demand of extradition, it is urged that this attempted extradition is by collusion with the prisoner. For the purpose of this application, however, the arrest and detention by the sheriff and the demand for surrender are both regarded as in good faith and not collusive. The former certainly is, and the latter will be so assumed to be, upon the simple word of the counsel pressing the surrender. We are clearly of the opinion that no law enables the governor of this state to abridge the legal remedies which suitors in its courts are pursuing against a party ; and that consequently no duty is imposed upon the court to vacate its own order of arrest and aid the executive mandate.

Matter of Briscoe.

With no intentional personal disrespect to the chief executive of this state, the remedy sought by this proceeding is withheld because, first, the provisions of the *habeas corpus* act do not authorize the surrender of a person held under civil process, for any such cause as has been urged before us; second, Briscoe, being detained under the laws of this state, cannot be discharged until the demands of those laws have been fully satisfied and discharged.

The writ of *habeas corpus* is discharged and the prisoner remanded to the custody of the sheriff.