## BARRANGER *v.* BAUM, next friend.

1. A writ of error will lie direct to this court from the decision of the judge of the city court of Richmond county in a habeas corpus case.
2. This was not a suit involving an extraordinary remedy, and section 5540 of the Civil Code, prescribing twenty days in which bills of exceptions should be presented in certain cases, did not apply.
3. In the trial of a habeas corpus, sued out for the liberation of one who is sought to be extradited for the violation of the criminal laws of another State upon a warrant of the Governor issued upon a requisition of the demanding State, it is not admissible to hear evidence upon, or inquire into, the motives or purposes of the prosecution.
4. The fact that the alleged offender had given bond in bail-trover in a suit against him for the recovery of the goods involved in the criminal charge constituted no legal reason for his release, and evidence thereof was inadmissible.
5. The question as to whether or not the alleged fugitive from the justice of another State is charged with a crime is one of law, and is always open upon the face of the papers to judicial inquiry. But if the indictment which forms the basis of the extradition proceedings substantially charges a crime in conformity to the laws of the demanding State, the prisoner should not be released, however defective such indictment might be either at common law, or under the well-known rules of criminal procedure.
6. The indictment in this case is sufficient to raise the presumption that it conformed to the laws of the demanding State in charging a crime; and the burden was on the petitioner of showing the contrary.

7. In a judicial inquiry as to what are the laws of such State, the courts, in a case of this character, will not be restricted to the rigid rule of considering only such testimony as may be formally tendered in evidence by the parties; but will seek the best sources of information at their command to ascertain the laws of the demanding State on the subject.

8. The indictment above mentioned sufficiently charged a crime under the laws of Maryland to authorize the Governor of this State to issue his warrant for the arrest and delivery of the accused; and it not being made to appear that he acted contrary to law, or without its sanction, the judge below erred in releasing the prisoner from the custody of the agent of the State of Maryland.

Argued January 24, — Decided March 2, 1898.

Habeas corpus. Before Judge Eve. City court of Richmond county. July 21, 1897.

*J. S. & W. T. Davidson,* for plaintiff in error.
*J. R. Lamar* and *C. H. Cohen,* contra.

LEWIS, J. Under an extradition warrant issued by the Governor of this State upon a requisition of the Governor of Maryland, Marcus Baum was arrested and turned over to Barranger as agent for the State of Maryland. This requisition was based on an indictment, a copy of which is as follows:

"State of Maryland, City of Baltimore, to wit:

The jurors of the State of Maryland, for the body of the City of Baltimore, do on their oath present that Marcus Baum, late of the City of Baltimore aforesaid, on the 7th day of August in the year of our Lord one thousand eight hundred and ninety-six, at the City of Baltimore aforesaid, by a certain false pretense by him then and there made to a certain Nathan Hamburger, who with Joseph Schenthal and Henry Schenthal was then and there trading under the firm name of Joseph Schenthal & Company (which said false pretense was not then and there a mere promise for future payment, and was not then and there a mere promise for future payment not intended to be performed), unlawfully, knowingly and designedly did obtain from the said Nathan Hamburger, Joseph Schenthal, and Henry Schenthal, so trading as Joseph Schenthal & Company as aforesaid, one thousand four hundred and sixteen shirts each of the value of thirty-three cents current money, sixty pairs of drawers each pair of the value of thirty-three

cents current money, sixty pairs of drawers each of the value
of twenty-one cents current money, ninety-six pairs of over-
alls each pair of the value of twenty cents current money,
twenty-four pairs of cuffs each pair of the value of ten cents
current money, one hundred and forty-four collars each of the
value of five cents current money, four hundred and forty-four
pairs of suspenders each pair of the value of thirteen cents
current money, twenty-four belts each of the value of twenty
cents current money, and three hundred and twenty-four hand-
kerchiefs each of the value of five cents current money, of the
goods and chattels of the said Nathan Hamburger, Joseph
Schenthal, and Henry Schenthal, then and there trading as
Joseph Schenthal & Company as aforesaid, then and there to
defraud, he, the said Marcus Baum, then and there well know-
ing the said false pretense to be false, then and there contrary
to the form of the act of Assembly in such case made and pro-
vided, and against peace, government and dignity of the State.

Henry Duffy,

The State's Attorney for the City of Baltimore."

Backed: "No. 2000. State of Maryland. Indictment. (True
Bill.)   Wm. Read, Foreman.   Filed, Dec. 4th, 1896.   Nathan
Hamburger, A. L. Rosenaur, Samuel Grant, and John Mul-
brenon, witnesses."

Whereupon Julius Baum, as the brother and next friend of
Marcus Baum, sued out in his behalf, before the Hon. William
F. Eve, judge of the city court of Richmond county, a writ of
habeas corpus, upon the following grounds:   (a) He has never
been a fugitive from the justice of Maryland.  (b) No crime for
which requisition can issue is charged against him in Mary-
land. (c) The alleged offense is not one for which, under the
laws of the United States, extradition can issue.  (d) The extra-
dition and requisition papers are void.  (e) He is under bond to
appear at the April term, 1897, of the superior court of Rich-
mond county, to answer for a charge and claim rising out of
the same transaction on which the requisition was based, and
bail has been given by him and is now pending in the superior
court.  (f) The restraining by Barranger is illegal.   Upon an
inspection of the record it appears that the extradition warrant

issued by the Governor of Georgia and the requisition papers of the Governor of Maryland were regular in all respects. At the hearing the petitioner introduced in evidence a certified copy of the record of the extradition proceedings. He also introduced evidence which was offered for the purpose of showing that the prosecution was not in good faith, but was instituted for the purpose of collecting a debt, this evidence consisting of affidavits to the effect that Rosenauer, who had come to Augusta as the agent of Schenthal & Company, and of other Baltimore creditors of Baum, and sued out bail-trover proceedings against him for Schenthal & Company, had made threats that unless Baum settled, he (Rosenauer) or Schenthal & Company, if they took his advice, would have Baum brought to Baltimore upon a requisition, and would in that way force him to settle or go to jail. Barranger objected to this evidence, (1) as being irrelevant; (2) because Schenthal & Company were not parties to the proceeding, but it was a proceeding upon the part of the State of Maryland against Baum as a fugitive from justice, in order that he might be taken to Maryland for trial upon an indictment; and (3) because the evidence was illegal, in that it went to the question of the guilt or innocence of the defendant, and the court was not authorized on the hearing of a writ of habeas corpus, in extradition proceedings, to try that question. Petitioner also offered in evidence bail-trover proceedings instituted by Schenthal & Company against Marcus Baum and returnable to the superior court of Richmond county at a time subsequent to the hearing then in progress, with a bond of Marcus Baum conditioned for the payment of the eventual condemnation-money, for the purpose of showing that Rosenauer was the agent of Schenthal & Company, and that the goods sued for in the trover proceedings were the same as those for which the indictment was found, and to show that Baum was under bond, as required in proceedings in bail-trover. This evidence was objected to by Barranger, on the grounds, (1) that it was irrelevant; (2) that the proceedings were between entirely different parties in law according to the record; and (3) because bond in bail-trover was not a bond within the meaning of the law requiring the personal appearance of the

defendant, or under which the security could surrender the principal in satisfaction of the bond. Barranger then introduced in evidence affidavits of Rosenauer, denying that he had made the statements referred to in the above-mentioned affidavits introduced by the petitioner. He also introduced an affidavit of one of the firm of Schenthal & Company, denying that Rosenauer was their agent in any way touching the indictment found.

The hearing was had on March 4, 1897. The judge presiding reserved his decision thereon until July 21, 1897, which was filed in the clerk's office July 24, 1897, discharging Marcus Baum; to which ruling Barranger excepts; and it will be our purpose now to inquire whether or not the court erred in so doing.

1. It is insisted in behalf of the defendant in error in this case, that when the judge was sitting upon the return of the writ of habeas corpus, he was not sitting as judge of the city court, but as the judge of a habeas corpus court; and that therefore a writ of error did not lie direct from his decision, but that the only channel through which it could pass for review by this court was first by certiorari to the superior court. The constitution of the State (Civil Code, § 5836) provides that "The Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors from the superior courts, and from the city courts of Atlanta and Savannah, and such other like courts as may be hereafter established in other cities." It is conceded that the city court of Richmond county is "such other like court" within the contemplation of the foregoing provision of the constitution. It therefore follows that there is the same constitutional right of reviewing by direct bill of exceptions errors from the city court of Richmond county as exists for the correction of errors from the superior courts. It will hardly be contended that this court has not jurisdiction for the trial and correction of errors from a decision of the judge of the superior court in a habeas corpus case. It would certainly be an anomaly in law if the judge of the superior court had first to review by certiorari his own decision in a habeas corpus case before the same could reach this court. But it is contended that under the

Civil Code, § 5527, authority is given either party to except to any decree of the superior court, "or of the judge thereof, in any matter heard at chambers." It will be seen, however, by an examination of that section, that the same refers to "either party in any civil cause, and the defendant in any criminal proceeding, in the superior courts of this State." Therefore, if a habeas corpus case before a judge of the superior court is not a case in the superior court, the above provision of the statute does not relieve us from the difficulty. If it is a case in the superior court, then it necessarily follows that when such a proceeding is before a judge of the city court, it is, in contemplation of law, a case pending in that court.

Under section 17 of the act creating the city court of Richmond county (Acts of 1880-1, p. 578), it is provided that "the judge of said city court shall have all the powers and authority, throughout his jurisdiction, of judges of the superior courts, except when by law exclusive power and authority are vested in the judges of the superior courts; and all laws relating to and governing judges of the superior courts shall apply to the judge of said city court, so far as the same may be applicable, except as herein provided." The judge of the superior court having jurisdiction to hear habeas corpus cases, and this jurisdiction not being exclusive, it necessarily follows from the above-quoted provision of the statute that the judge of this city court has concurrent jurisdiction over such cases. Construing this statute in connection with the constitutional provision above cited, it also follows that if a writ of error lies direct to this court from a decision of a judge of the superior court in such cases, the same authority exists for a review in like manner of a decision rendered by the judge of this city court in the same class of causes. The true intent of the constitutional provision upon the subject was to confer the right of carrying to this court by direct bill of exceptions any ruling made by judges of the superior court, and of the city courts mentioned, in any cause passed upon by them in their judicial capacity. Jurisdiction is conferred upon these branches of the superior and city courts (namely, upon the judges thereof) to hear and determine writs of habeas corpus; and the fact that all the ma-

chinery of those courts at a regular term is not called into requisition for the purposes of such trial is not inconsistent with the idea that such cases are nevertheless suits in said courts. The law recognizes no such courts eo nomine as habeas corpus courts. It is true, in the case of *Moore* v. *Roberson*, 63 *Ga.* 506–8, Justice Bleckley alluded to the ordinary on trying such cases as holding a special habeas corpus court. The reason assigned for this was, that jurisdiction in such matters was not conferred by statute upon the court of ordinary, but upon the ordinary; and hence the constitution of 1877, by restricting the jurisdiction of courts of ordinary in some respects to county matters, did not affect the statutory power of the ordinary previously granted to preside on the return of writs of habeas corpus. In the case of *Southern Express Co.* v. *Lynch*, 65 Ga. 245, Justice Jackson states that when the judge of the superior court is trying a case upon a writ of habeas corpus, he sits as a habeas corpus court and not as the superior court. This was merely obiter, and not necessary to the decision rendered in that case, which was simply that the proper remedy for one who was illegally imprisoned with or without form of law is by habeas corpus. But we do not consider this dictum of the court necessarily in conflict with the view herein entertained. We think, however, a more accurate legal view to take of the matter is, that when a judge of a superior or city court is sitting on the trial of a habeas corpus, he is presiding in a cause pending in the court of which he is judge, and his judgment is a decision of that court, the court recognized by the constitution and established by the laws of the State. The fact that the trial does not occur in regular term does not affect the question. In the case of *Moore* v. *Ferrell*, 1 *Ga.* 6, a motion was made to dismiss the writ of error, on the ground that the order of the judge below was made at chambers, and that the Supreme Court possessed no jurisdiction over the decisions of the judges of the superior courts made in vacation. Judge Lumpkin, who delivered the opinion in that case, said "that the session of the court below, although intermediate the regular terms, was nevertheless a term quoad the judgment or decree complained of."

2. It was further contended by the defendant in error, that the bill of exceptions, being presented to the judge and signed by him more than twenty days after his decision, was too late under section 5540 of the Civil Code. We do not think this case falls within the class mentioned in that section. The fact that the case was heard at chambers, and was speedily returnable, is no reason why it should be treated as an extraordinary remedy. To sustain this contention, a possessory warrant or any other summary proceeding would have to be considered as an extraordinary remedy. It required an act of the legislature (Acts of 1897, p. 53) to make the section of the code just cited applicable to habeas corpus cases. The bill of exceptions in this case was sued out before the passage of said act.

3. The right of one nation to demand the delivery of an offender against its laws who has taken refuge in another State depends usually upon treaties between the respective countries. These treaties the courts should regard as a paramount law of the land, and whenever called upon to expound or enforce them, they should protect with vigilance the plighted faith of their government. As far back as two and a half centuries ago, when but few of the American colonies had been organized and when those in existence were in their infancy, history teaches us that compacts were entered into among them recognizing the right of extradition and agreeing to deliver up to each other fugitives from justice. After the colonies had organized as independent and separate States for their common protection and defense under the old articles of confederation, a similar treaty under article 4 of that instrument was entered into. Again, when the present constitution was adopted, a like compact was sealed by the States, securing to them the same rights; not asserting any new power they never previously had, but simply delegating to the Federal government the power to regulate interstate extradition in order to produce uniformity in procedure looking to the apprehension and delivery of offenders against the penal laws of one State who had sought an asylum in another State of the Union. For the law governing this case we must, therefore, look to the constitution of the

United States and the acts of Congress passed in pursuance thereof. The constitution provides as follows: "A person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." In pursuance of this constitutional provision, Congress has enacted the following statute: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be delivered and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear," &c. Revised Statutes of the United States, § 5278.

From these provisions of the constitution and act of Congress, it will be observed that the alleged fugitive whose extradition is sought must simply be *charged* with the commission of a crime against the laws of the demanding State. The courts of the asylum State can not, upon a writ of habeas corpus, inquire into the guilt or innocence of the accused. No such jurisdiction is given them by law; and it would be a manifestly unwise provision if authority to investigate such a question were conferred on a tribunal that had no power to compel the attendance of witnesses who resided in another State, and whose testimony would be necessary to throw light on the issue. Upon the hearing of the present case, petitioner introduced evidence for the purpose of showing that the prosecution was not in good faith, but was instituted for the purpose of collecting a

debt. This evidence could only be insisted on as a circumstance throwing light upon the guilt or innocence of the prisoner. We think, therefore, it was clearly inadmissible, and that the judge erred in undertaking to inquire into the motive and purpose of this prosecution. It was held by the Supreme Court of North Carolina, In re Sultan, 20 S. E. Rep. 375, that "Where a warrant of extradition is granted by the Governor, the courts will not inquire into the motive and purpose of the extradition proceedings, to ascertain whether the object thereof is to punish a crime or collect a debt." And Burwell, J., who delivered the opinion of the court in that case, said: "The executive and judicial are co-ordinate departments of the government. The judiciary will control and correct the acts of the executive officers only when they are acting contrary to law, or without its sanction." The executive of the asylum State has probably the right to investigate such issues of fact either before or after the issuing of his warrant of extradition. He has at least the power; for while the constitution and act of Congress seem to impose upon him an imperative duty, yet it is simply a moral obligation, for if he refuses to honor the requisition of the executive of the demanding State, there is no power in any branch of the government, State or Federal, that can coerce him. He can with impunity refuse to issue the warrant, and after issuing the same he can revoke it and order the release of the prisoner. Commonwealth of Kentucky *v.* Dennison, 24 Howard, 66; Taylor *v.* Taintor, 16 Wallace, 266–374; Roberts *v.* Reilly, 116 U. S. 81. But when the Governor's warrant has been issued and executed, and release is sought for the prisoner by appeal to the courts on a habeas corpus, the only question of which the judiciary has jurisdiction is whether or not the executive has acted contrary to law.

4. The fact that the accused had given a bond in bail-trover, in a suit for the recovery of the identical goods alleged to have been obtained under false pretenses, furnished no legal reason for his release on the writ of habeas corpus. Such a bond was simply for the eventual condemnation-money, and in nowise for the personal appearance of the accused to answer to any charge in any court of this State.

5. A fundamental and jurisdictional question which arises whenever one State has made a demand upon another for the return of a fugitive from its justice is, whether or not such offender is charged. with the commission of a crime against the laws of the demanding State. This is a question of law, and is always open on the face of the papers to judicial inquiry. See Roberts *v.* Reilly, 116 U. S. 80; Ex parte Reggle, 114 U. S. 642. It was ably and thoroughly argued by counsel for the defendant in error, that the indictment which forms the basis of the extradition proceedings in this case charged no crime against the prisoner; that it was fatally defective, in that it did not allege what the false pretenses were by which the accused obtained the goods; it did not allege that the owners believed such pretenses and acted upon them, or, in other words, that they were defrauded; and that this objection was not merely one to technical defects or irregularities in the indictment, was not one that went to its form, but substance. The words "treason, felony, or other crime," in the constitution of the United States, include every offense forbidden and made punishable by the laws of the State where the offense is committed, whether it be a felony or misdemeanor, or an act made criminal at common law or by statute. Commonwealth *v.* Dennison, 24 Howard, 66. Obviously, therefore, to determine whether or not a crime is charged in this case, we must have regard alone to the laws of the State of Maryland on the subject. That the indictment is defective either at common law, or under the laws of the State in which the person is apprehended, or under other well-known rules of criminal procedure, is not cause for the release of the prisoner upon the trial of the writ of habeas corpus. Upon the universally recognized doctrine that "every State has the right to regulate the forms of pleadings and process in civil and criminal cases, and to determine what shall be deemed a sufficient indictment, information, affidavit or declaration in its own courts," the sufficiency of the indictment must, in the present case, necessarily be tested by the laws of Maryland. See Webb *v.* York, 79 Fed. Rep. 616, and cases cited. In the case Ex parte Reggel, 114 U. S. 643, above cited, that court said: "Each State has

the right to prescribe the forms of pleading and process to be observed in its courts, in both civil and criminal cases, subject only to those provisions of the national constitution designed for the protection of life, liberty and property in all the States of the Union; consequently, in a case involving the surrender, under the act of Congress, of a fugitive from justice, it may not be objected that the indictment is not framed according to the technical rules of criminal pleading, if it conforms substantially to the laws of the demanding State." In this instance, no one will question the legislative power in the State of Maryland to enact a law making it penal for one to obtain goods by false pretenses with intent to defraud, whether such pretenses actually result in defrauding any one or not; nor can it be questioned that its legislature would have like power to provide that the pleadings of the State in such a case need not specifically set forth the false pretenses that were used. Such provisions in its laws, however unwise they might be, or to whatever extent they might be in derogation of the common law, could in nowise affect any constitutional guarantee that a citizen has for the protection of life, liberty and property.

The case of Pearce *v.* Texas, 155 U. S. Rep. 311, we regard as conclusive authority on this subject. Pearce was arrested in Texas on an executive warrant issued by the Governor of that State upon a requisition of the Governor of Alabama, to be delivered up to the latter State to answer two indictments found against him in the city court of Mobile. While in the custody of the agent of Alabama, Pearce sued out a writ of habeas corpus, contending that he should be discharged for the reason that the indictments were insufficient to authorize his extradition, because it was not alleged therein that the offenses were committed in Alabama in violation of her laws; that the indictments were wholly void, in that no time or place was laid therein, and it did not appear where the offenses were committed, nor that they were not long since barred. The record in that case, as in the case we are now considering, showed the requisition made by the Governor of Alabama, copies of the indictments duly certified, the warrant of the Governor of Texas; and in effect the relator relied for his discharge en-

tirely upon the invalidity of the indictments. The case was first tried before the judge of the 42d district of the State of Texas. On the hearing of the petition the district judge refused to discharge the prisoner; he thereupon appealed to the Court of Criminal Appeals for the State of Texas, where the judgment below was affirmed (32 Tex. Crim. App. 301). Thereupon the case was appealed to the Supreme Court of the United States, and by that court again affirmed. An opinion was· filed by the Court of Appeals by Simkins, J., in which it was held that an indictment which, under the laws of the demanding State, sufficiently charges the crime, will sustain a requisition, even though insufficient under the laws of the asylum State. The majority of the judges of the Court of Appeals did not concur in all the propositions stated in that opinion, but went one step further, and expressed their views as follows: "We desire to modify certain propositions stated in the opinion of Judge Simkins. It is intimated, if not stated directly, that the relator would have the right to show by proper evidence that the indictment in substance was not sufficient under the laws of the demanding State. Our position upon this question is, that if it reasonably appears upon the trial of the habeas corpus that the relator is charged by indictment in the demanding State, whether the indictment be sufficient or not under the law of that State, the court trying the habeas corpus will not discharge the relator because of substantial defects in the indictment under the laws of the demanding State." And, in reviewing this case, the Supreme Court of the United States affirmed the judgment upon the ground that the indictments substantially conformed to the laws of Alabama, ruling that their sufficiency as a matter of technical pleading would not be inquired into on habeas corpus. Citing Ex parte Reggel, 114 U. S. 642.

6. But it is insisted in this case that the judge below, upon the trial of the writ of habeas corpus, did not have before him any law of the State of Maryland, and that therefore there was no evidence that the indictment charged any crime against the laws of that State. Petitioner alleges in this case an illegal detention. He asserts that the indictment preferred against

him charges him with no crime against the laws of the State
demanding his delivery.    The burden of proof is upon him to
show the illegality of the act of the executive of this State.    The
fact that an indictment had been found charging him with cer-
tain acts against the penal laws of another State raises a pre-
sumption that the acts charged constitute an offense against
said laws, and that the indictment substantially conforms to
the rules of criminal procedure thereunder.    If it was incum-
bent then upon either party to formally introduce on the trial
the statute of the demanding State, would it not seem reason-
able, under these circumstances, that the burden of overcoming
this presumption would rest upon him who alleged that no crime
was charged?    An indictment, being an official proceeding in-
stituted by a branch of the government, founded upon the oath
of a tribunal presumed to act without fear or favor and with
impartiality, carries with it more weight and validity than the
affidavit of an individual which has not upon it the stamp of
official authority.    These views we think are sustained by an
unbroken current of authority upon the subject.    The Supreme
Court of Nebraska, in a well-considered case on this subject,
sustains this conclusion; and as the authorities cited and quoted
are so apt and in point, we give the following extract from the
opinion delivered in that case.    Harrison, J., speaking for that
court, In re Van Sceiver, 60 N. W. Rep. 1037, makes the fol-
lowing citation from Hawley, Interst. Extrad. (p. 30): "'The
fact that an indictment has been found is regarded as affording
at least prima facie evidence that the act charged is a crime.'
And the same author further says, on pages 32, 33, of his work:
'The distinction between an affidavit and an indictment in one
case is stated as follows:    "If the charge is by way of affidavit
against the alleged fugitive, and it appears clearly from the
whole facts stated in the affidavit, taken together, that no crime
had been committed, it might, with some show of reason, be
claimed that the subject-matter was not within the provisions
of the constitution and act of Congress, and therefore, as to the
jurisdiction of the executive to issue the warrant, the whole
matter would be non coram judice."    The case in 1 Park. Cr.
429 [In re Heilbonn], is of this character.    But that is far

from being this case. Here the charge against the alleged fugitive is by a bill of indictment found by a grand jury, and whether the bill charges an indictable offense under the statute of Illinois should be left to the determination of the courts of that State. [Ex parte Greenough, 31 Vt. 279.] While the rule seems to be that the making of an affidavit, and the issuing of a warrant by a magistrate, is not evidence that the act charged is a crime, all of the authorities agree that the finding of an indictment is at least prima facie evidence that the act charged amounts to a crime. In re Briscoe, 51 How. Pr. 422.' The Supreme Court of Maine, in an opinion given to the Governor, said: 'In our opinion it is the duty of the executive of this State to cause to be delivered over to the agent of another State, at the request of the executive thereof, a citizen of their State charged by indictment with the fraud before set forth, which, being indicted in such State, may be presumed to be there regarded as a crime.' 24 Am. Jur. (Me.) 226; Hurd, Hab. Corp. pp. 608, 609, and cases cited and commented upon; Pearce v. State (Tex. Cr. App.), 23 S. W. 15; Brown's case, 112 Mass. 409. In Moore on Extradition (volume 2, p. 1030, § 638) it is stated as follows: 'It is believed that there is no case in which a court has, on habeas corpus, discharged a fugitive from custody on a rendition warrant, on the ground that an indictment accompanying the requisition did not constitute or contain a sufficient charge of crime.'"

The trend of authorities above cited seems to point to the rule, that the courts will not go behind an indictment for the purpose of inquiring whether or not it substantially complies with the laws of the State where it was found. We are not prepared to hold, however, that the courts can not enter into such an investigation; or that the petitioner, on a writ of habeas corpus, would not have the right to show that the indictment charges no crime under laws of the demanding State. What we do rule is, that the indictment in this case, being duly authenticated by the proper authorities in the State of Maryland, accompanied as it is with requisition papers in due and legal form, is sufficient to raise the presumption that it conforms to the laws of that State in charg-

ing a crime, and that the burden is on the petitioner to show the contrary.

7. Neither do we think that in a judicial investigation of this kind the courts should be held down to the rigid rule of considering only such proof of the laws of another State as has been formally tendered in evidence by one of the litigants. It is true ordinarily that whenever it becomes necessary for a court of one State, in order to give effect to a public act of another, to ascertain what effect it has in that State, the law of that State must be proved as a fact. *Craven v. Bates, Kingsbery & Co.*, 96 *Ga.* 78. But in the case *Herschfeld v. Dexel*, 12 *Ga.* 582, this court held: "The court on the trial of a cause may proceed on their knowledge of the laws of another State, and it is not necessary in that case to prove them; and their judgment will not be reversed, when they proceed in such knowledge, unless it should appear that they decided wrong as to those laws." Again, in the case of *Chattanooga, Rome & Columbus R. Co. v. Jackson*, 86 *Ga.* 676, this court, upon a point which involved the law of Tennessee on the subject of appeals and their dismissal, and the practice in the circuit courts in regard to such matters, held, that while the trial judge might have resorted to the statutes and decisions of the Supreme Court of Tennessee, they would not say that it was error to receive the testimony of skilled attorneys who practiced in the courts of that State, to aid the trial judge in arriving at a proper conclusion as to what was the law of that State. And our present Chief Justice, who rendered the opinion of the court in that case, said: "Knowing as we do the great difficulty under which courts labor in arriving at the true law of a case, and especially the difficulty encountered here as well as by the court below in this case, we can not condemn a trial judge for resorting to any sources of information which will aid him in coming to a correct conclusion as to the law. The record shows that the judge in this case did not confine himself to the opinions of the attorneys, but that the statutes of Tennessee and the decisions of its Supreme Court were read to him." The above-cited cases involved simply the rights of individuals, who were insisting in the courts of this State, where its laws ordinarily

govern the rights of parties, that the laws of another State were different and should prevail.　Upon the question we are now considering, neither the statutes of this State nor the common law can have any bearing.　The court is necessarily called upon to· decide whether a crime has been charged against the laws of another State; and hence its laws are alone in issue.　In such a case, involving, as it does, not only the liberty of a citizen but the rights of another State, we think it would be the right, if not the duty, of the courts to seek the highest sources of information at their command to ascertain the laws of such State on the subject and to give them force and effect according to their true intent and spirit, whether or not such laws have been formally tendered in evidence.　To this end they may resort to the published statutes of that State, or to the published decisions of its highest judicial tribunals.

8. While the indictment in the present case, under the laws of Georgia, on account of its want of certainty and precision in the allegations essential to constitute a crime, might before our courts be held bad on demurrer, yet upon an examination into the statutes of Maryland and decisions of its Supreme Court on the subject, we think it substantially complies with the laws of that State.　By the code, art. 27, sec. 288, of that State, it is provided that "in any indictment for false pretences, it shall not be necessary to state the particular false pretences intended to be relied on in proof of the same, but the defendant, on application to the State's attorney before the trial, shall be entitled to the names of the witnesses and a statement of the false pretences intended to be given in evidence."　And by an act of the legislature of that State, Code art. 27, sec. 291, in order to obviate certain technical difficulties and refined distinctions which frequently arose in the trial of classes of cases now under consideration, it was provided that in indictments for obtaining property by false pretenses, and also in some other cases, it shall be sufficient to allege that the defendant did the act with intent to defraud, without alleging the intent of the defendant to be to defraud any particular person, and that on the trial it shall be sufficient to prove that the defendant did the

act with an intent to defraud.   State of Maryland *v.* Blizzard, 30 Md. 385.

Upon a careful review of the entire case we are unavoidably led to the conclusion that the chief executive of this State did not act contrary to law when he honored the requisition from the State of Maryland, and that the prisoner has not been illegally deprived of his liberty.   The right of any citizen to have the legality of his restraint inquired into by the courts on a writ of habeas corpus is as old as English liberty itself, and will no doubt endure as long as any institution of our government exists.   But no less important to the rights of the people is the execution of such laws enacted for their protection against offenders who would invade the rights of life, liberty or property.   "The object," said Attorney-General Cushing, "to be accomplished in all these [extradition] cases is alike interesting to each government,—namely, the punishment of malefactors, the common enemies of every society."   "The improved facilities of communication which modern invention has afforded, and the consequent ease with which malefactors can escape from the jurisdiction of the countries whose laws they have violated, have rendered it essential to the order of society that flight should not secure immunity from punishment."   1 Moore on Extradition, § 3.   Upon this principle is founded the doctrine of interstate extradition in this country. By the observance of this constitutional compact entered into between the States, not only is the honor of the State preserved, but the rights of its own citizens protected.   For a State to establish an asylum for the protection of persons who have violated the criminal laws of another State, would be simply to invite within her borders an element of citizenship which would be a menace to society.

*Judgment reversed.   All the Justices concurring.*