### *In re* RENSHAW *et al.*

1. The Iowa statute, providing that if any mortgagor of personal property, while the mortgage remains unsatisfied, shall willfully sell or dispose of the property without the mortgagee's written consent, he shall be guilty of larceny, etc., covers the case of a sale in Iowa of personalty mortgaged to residents of that state, though the mortgage was executed, delivered and filed in another state by nonresidents of Iowa.

2. In habeas corpus by prisoners held pursuant to an indictment found in a sister state, the burden is on relators to show that the indictment is insufficient by producing, if necessary, the statute under which it was found; and hence the fact that such statute was not submitted with the requisition papers to the governor under whose warranty relators were arrested will not warrant the presumption that the law of the sister state is the same as that of the forum, under which the indictment would be insufficient.

3. It is presumed that the acts charged in the indictment found in a sister state, under which the extradition of fugitives from justice is sought, are sufficient to constitute a crime under its laws.

4. Where a warrant is issued by the governor upon proper requisition papers from a sister state, and in strict compliance with the act of Congress, under which fugitives from justice are arrested, the technical sufficiency of the indictment found in the sister state to charge a crime under its statutes is a question for the determination of its courts.

(Opinion filed April 5, 1904.)

Appeal from circuit court, Charles Mix county; Hon. E. G. SMITH, Judge.

Application for a writ of habeas corpus by C. M. and C. S. Renshaw, directed to G. M. Shuck, as sheriff of Charles Mix county. From an order dismissing the writ and remanding plaintiffs to custody, they appeal. Affirmed.

*E. P. Wanzer, J. W. Lindsey,* and *R. B. Tripp,* for appellants. *French & Orvis,* for respondent.

FULLER, J. This habeas corpus proceeding was instituted in the circuit court to secure the discharge of C. M. and C. S. Renshaw from alleged unlawful confinement and retention by G. M. Shuck, as sheriff of Charles Mix county. On this appeal from an order dismissing the writ, and remanding the accused to the custody from which they were brought, it will be necessary to consider the following facts disclosed by the record: On the 6th day of May, 1903, an indictment was found, returned and filed in the district court of Woodbury county, Iowa, charging appellants and each of them with the crime of larceny committed by the sale of certain mortgaged personal property, which, under the laws of that state, constitutes a felony. After the presentment and filing of this indictment in the above-mentioned court, having full jurisdiction to entertain the case, an application for a requisition was regularly made to the Governor of Iowa, showing that appellants, as fugitives from justice, were in the state of South Dakota. Thereupon the Governor of Iowa issued a requisition, which, together with the necessary papers and proof, were presented to the Governor of this state, and the same was accepted and allowed, together with a warrant in due form, directed to the sheriff, cor-

oner, or any other peace officer of Charles Mix county, or any other county in the state of South Dakota, requiring the arrest of appellants at any place within the limits of this state, to be safely kept and delivered to C. W. Jackson, the person duly authorized by the Governor of Iowa to receive them.   By virtue of the foregoing indictment, warrant, and proceedings, respondent, G. M. Shuck, sheriff of Charles Mix county, arrested each of the accused, and still retains them both in custody, ready to be turned over to C. W. Jackson, as in such warrant commanded.

One of the important questions presented is whether the statute of Iowa, declaring the sale of mortgaged personal property to be larceny, applies to chattels described in a mortgage executed and delivered in South Dakota to a person residing in the state of Iowa, where it is charged the sale took place.

To determine the point, it will be necessary to construe the following provision of the Iowa statute, under which the indictment was drawn: "If any mortgagor of personal property, while the mortgage upon it remains unsatisfied, willfully destroy, conceal, sell, or in any manner dispose of the property covered by such mortgage, without the written consent of the then holder of such mortgage, he shall be guilty of larceny, and punished accordingly." It seems reasonably clear that this statute was couched in general terms for the purpose of covering all unauthorized disposition of mortgaged personal property effected in that state by the mortgagor, and there is nothing to suggest that the Legislature intended to exclude from its operation delinquents who sell personal property in Iowa that is described in a mortgage made payable therein to

one of her residents, but executed and delivered elsewhere. Neither the flagrancy of the offense nor the probability of its commission would be lessened by the exoneration of dishonest non-resident mortgagors, and it was not the intention of the Legislature to deprive Iowa mortgagees and resident dealers in personal property of the protection afforded by the statute simply because a mortgage running to one of her citizens was of necessity executed, delivered, and filed in another state.

While conceding that the sufficiency of an indictment must be determined by the law of the demanding state, it is urged that the Iowa statute was not submitted with the requisition papers to the Governor nor to the court at the hearing below, and therefore the presumption must be indulged that such statute is the same as the law in this state, under which it is maintained that facts sufficient to constitute a public offense are not stated. It is only in the absence of something to the contrary that the law of a sister state is presumed to be the same as our own, and when, as in this case, it is alleged by the petitioners for the writ of habeas corpus that they are illegally deprived of their liberty under an indictment which fails to state facts sufficient to constitute a public offense, the burden is upon them to establish such allegation by producing the controlling statute or other competent proof.

In the well-considered case of Barranger v. Baum, (Ga.) 30 S. E. 524, 68 Am.St. Rep. 113, there are many apt quotations from supporting authorities to the effect that the finding of an indictment in a sister state is at least prima facie evidence that the acts charged constitute a crime, and in disposing of the question here presented, the court say: "But it is insisted in this case that the judge below, upon the trial of the writ of

habeas corpus, did not have before him any law of the state of Maryland, and that, therefore, there was no evidence that the indictment charged any crime against the laws of that state. * * * The burden of proof is upon him to show the illegality of the act of the executive of this state. The fact that an indictment had been found charging him with certain acts against the penal laws of another state raises a presumption that the acts charged constitute an offense against said laws, and that the indictment substantially conforms to the rules of criminal procedure thereunder. * * * An indictment, being an official proceeding, instituted by a branch of the government, found upon the oath of a tribunal, presumed to act without fear or favor, and with impartiality, carries with it more weight and validity than the affidavit of an individual, which has not upon it the stamp of official authority. These views, we think, are sustained by an unbroken current of authority upon the subject."

While the action of the grand jury in finding an indictment never justifies an inference of guilt, the presumption is that the acts charged therein, when made the basis of a requisition, are sufficient to constitute a crime, under the laws of a demanding state.

Appellants being in custody by virtue of the warrant of our Governor, issued upon proper papers and in strict compliance with the act of Congress, the technical sufficiency of the indictment to charge larceny, under the statute of Iowa, is a question that must be determined in that forum.

The Nebraska court quotes with approval from Moore on Extradition, as follows: "It is believed that there is no case in which a court has, on habeas corpus, discharged a fugitive

from custody on a rendition warrant, on the ground that an indictment accompanying the requisition did not constitute or contain a sufficient charge of crime." In re Van Sceiver, 60 N. W. 1037, 47 Am. St. Rep. 730. To the same effect are the following cases: In the Matter of John Leary, 10 Ben. 197, Fed. Cas. No. 8,162; Commonwealth of Ky. v. Dennison, 24 How. 66, 16 L. Ed. 717; In the Matter of John L. Clark, 9 Wend. 212; Robinson v. Flanders, 29 Ind. 10; Ex parte Lewis, 79 Cal. 95, 21 Pac. 553; Ex parte Swearingen, 13 S. C. 74.

The headnote, fully sustained by the decision in Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, is as follows: "Each state has the right to prescribe the forms of pleading and process to be observed in its courts, in both civil and criminal cases, subject only to those provisions of the national Constitution designed for the protection of life, liberty, and property in all the states of the Union; consequently, in a case involving the surrender, under the act of Congress, of a fugitive from justice, it may not be objected that the indictment is not framed according to the technical rules of criminal pleading, if it conforms substantially to the laws of the demanding state." Assuming that the law of Iowa was presented to the Governor and considered by the court below, it would still appear probable therefrom, and from papers regularly issued and duly authenticated, that appellants are charged with a crime, and are fugitives from justice.

The order appealed from, by which the writ is dismissed and the petitioners remanded to the custody of respondent, is therefore affirmed.