## KEMPER v. METZGER, SUPERINTENDENT, ETC.

[No. 20,958. Filed June 20, 1907. Rehearing denied October 11, 1907.]

1. EXTRADITION.—*Interstate Rendition.*—*Basis of Right.*—The right of interstate rendition of fugitives from justice rests upon article 4, §2, of the federal Constitution. p. 118.
2. CONSTITUTIONAL LAW.—*Due Process.*—*Extradition.*—An alleged fugitive from justice has the constitutional right to challenge the process employed against him, on the ground that it does not constitute "due process" within the meaning of the federal Constitution. p. 118.
3. HABEAS CORPUS.—*Return.*—*Exceptions.*—*Demurrer.*—The sufficiency of the return to a writ of *habeas corpus* cannot be raised by a demurrer, the statutory and proper method being by an exception thereto. p. 119.

4. HABEAS CORPUS.—*Return.—Exceptions.—Form.*—An exception to the third paragraph of a return in a *habeas corpus* case, in form: "petitioner for exception to the third paragraph of return says, that said paragraph does not state facts sufficient to constitute a defense to petitioner's writ," sufficiently presents the question of the sufficiency of such return. p. 119.

5. APPEAL.—*Right Result.—Wrong Remedy.*—A judgment will not be disturbed, where a right result was reached, though by the wrong procedure. p. 120.

6. EXTRADITION.—*Requisition.—Essentials. — Demand.* — The warrant, issued on a requisition for a fugitive from another state, to justify an arrest, should show that a demand was made upon the Governor of this State; that the prisoner has been charged, before a tribunal with power to try, with the commission of a crime in the demanding state; that a regular proceeding has been begun in said state and the time and place of the commission of the alleged crime. p. 120.

7. SAME.—*Requisition.—Essentials.—Warrant.*—A requisition for the return of an alleged fugitive should show a copy of an indictment, duly certified as authentic, charging such fugitive with the commission of a crime; but the warrant of arrest, issued by the Governor, need not show that the crime was regularly and sufficiently charged in the demanding state. p. 120.

8. EVIDENCE.—*Proper Criminal Charge.—Requisition.—Warrant.—Extradition.*—The Governor's warrant reciting that the arrest and return of a fugitive has been demanded upon a properly accredited criminal charge set forth in the demand made upon the Governor, is *prima facie* evidence that such fugitive was properly charged in the demanding state. p. 121.

9. HABEAS CORPUS.—*Return.—Exceptions.—Answer.*—An exception to an officer's return in a *habeas corpus* case, by a fugitive, challenges the regularity only of the extradition proceedings; and if such proceedings are sought to be impeached, it must be by answer, the return being considered as true unless specifically denied. p. 121.

10. EXTRADITION.—*Interstate Rendition. — Demand. — Warrant. — Essentials.*—A warrant issued by the Governor, in an interstate rendition proceeding, which recites a demand upon him, and sets out a copy of a regular indictment pending in the demanding state, sufficiently shows such demand and the time and place of the commission of the offense. p. 122.

11. SAME.—*Interstate Rendition.—Limitation of Actions.—Burden of Proof.*—The burden is upon the fugitive to allege and prove that the crime for which he is sought on interstate rendition proceedings is barred by the statute of limitations of the demanding state. p. 123.

12.   EXTRADITION.—*Governor.*—*Lieutenant.*—*Execution of Requisition Papers.*—Interstate rendition papers, executed by the Lieutenant Governor, as Governor, of the demanding state are not bad, unless the alleged fugitive plead and prove that such Lieutenant Governor had no power to act as Governor at the time of the execution of such papers.   p. 124.

From Marion Circuit Court (15,439) ; *Henry Clay Allen,* Judge.

*Habeas corpus* by Ethelbert T. Kemper against Robert Metzger, as Superintendent of Police of the City of Indianapolis.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*T. J. Moll, Martin Hugg* and *F. R. Bonifield,* for appellant.

*Ovid B. Jameson, Frederick A. Joss* and *Linn D. Hay,* for appellee.

HADLEY, C. J.—*Habeas corpus.* Appellant was arrested by appellee on a warrant issued by the Governor of this State based upon a requisition by the Governor of Tennessee for a return of appellant to the latter state as a fugitive from justice. Appellant, in his petition, alleges that he is now, and has been continuously since July, 1904, a resident of Indiana, and that on November 3, 1906, he was unlawfully arrested, and is now unlawfully restrained of his liberty, and imprisoned in Indianapolis by appellee, as superintendent of the police of said city, on a pretended charge of embezzlement in Tennessee; that he has not committed, nor been charged by anyone with committing, any crime in this State; that he has been arrested and imprisoned on a pretended indictment presented by the grand jury of Shelby county, Tennessee, at the September term, 1906, wherein E. T. Kemper is charged with having, in July, 1904, embezzled the sum of $1,500 belonging to certain persons; that said indictment charges no crime against the petitioner under the laws of this State, or of Tennessee; that said indictment purports to be authenti-

cated by John L. Cox, as Governor of Tennessee, but in fact Cox was elected Lieutenant Governor, and his term of office as such has not expired; that the agent of Tennessee is threatening to take him back to that state, and he prays to be brought before the court and discharged. To the writ of *habeas corpus* appellee made return in three paragraphs, the third of which, being more elaborate and furnishing. foundation for all the questions arising in the case, is set out in full.

"For a third and further paragraph of answer and return to said writ, Robert Metzger, the defendant, and the person to whom the writ of *habeas corpus* herein was directed, says: That he is now and was at the time said writ was issued, superintendent of police of the city of Indianapolis, Marion county, Indiana, and for his answer and return thereof, upon oath, says: That said Ethelbert T. Kemper therein named was, at the time of the service of said writ upon the defendant, confined and restrained of his liberty by him as such superintendent of police, and that this defendant, since the service of said writ as aforesaid, to wit, on November 5, 1906, transferred said Ethelbert T. Kemper to the care and custody of Edward G. Sourbier, sheriff of Marion county, Indiana, to be safely and securely kept by him, said Sourbier, in the jail of said county, and that said Ethelbert T. Kemper is now being confined and restrained of his liberty by said sheriff of said county, lawfully and by virtue of a warrant of arrest issued by the Governor of Indiana upon a requisition from the Governor of Tennessee, and directed to any sheriff or constable in this State, commanding the arrest of said Kemper, a copy of said order of arrest being filed with this answer and made a part thereof, and the original of which this defendant herewith produces, and upon the authority of which he made the arrest of said Kemper, and by virtue of which he is held, restrained and imprisoned. As further return to said writ said Robert Metzger would show that he now has the body of said Ethelbert T. Kemper in said court, together with said writ as herein commanded.

Robert Metzger."

"Order of Arrest.

In the name and by authority of the State of Indiana.

Executive Department.

To any sheriff or constable of any county of Indiana, greeting: Whereas, the executive authority of the state of Tennessee has, by requisition of his excellency, John L. Cox, Governor thereof, dated Nashville, November 30, 1906, directed to the Governor of this State, and deposited in the office of the Secretary of State, demanded that E. T. Kemper be arrested as a fugitive from the justice of the state of Tennessee aforesaid, and delivered to T. J. Hunn, the agent of said authority, appointed to receive him, and has, moreover, produced therewith a copy of an indictment charging the person so demanded with having committed a crime within the jurisdiction of said state, which copy is certified as authentic by the Governor aforesaid; and whereas, the commission of said crime is charged in manner and form as follows, namely:

State of Tennessee, Criminal Court of Shelby county, September term, 1906.

The grand jurors of the state of Tennessee, duly elected, impaneled, sworn and charged to inquire in and for the body of the county of Shelby, in the state aforesaid, upon their oaths present that E. T. Kemper, late of the county aforesaid, on the —— day of July, 1904, before the finding of this indictment in the county aforesaid, not being then and there an apprentice or a person under the age of eighteen years, and being in the employ of Drewry & Ralston, a firm composed of L. D. Drewry and E. H. Ralston, as their agent and representative in Memphis, Shelby county, Tennessee, and by virtue of said employment, did collect and receive into his care, custody and possession from divers and sundry persons, to the grand jurors aforesaid unknown, the sum and value of $1,500, good and lawful money of the United States, a more particular description of which is to the grand jurors aforesaid unknown, all of the value of $1,500, the proper goods and chattels of Drewry & Ralston aforesaid, which sum aforesaid said E. T. Kemper, by virtue of his employment aforesaid, was required to turn over, deliver and account for to said Drewry & Ralston aforesaid, all of

which he failed and refused to do, but did unlawfully, feloniously and fraudulently embezzle and convert the amount of $1,500 to his own use with intent unlawfully and feloniously to deprive the true owner thereof. Against the peace and dignity of the state.

George S. Yerger,

Attorney-General, Criminal Court of Shelby County, Tennessee.

A true copy from the record.

[Seal.]                          Jerome E. Richards, Clerk.

J. E. Richards, Jr., D. C.

It is therefore ordered, by the executive authority of the State of Indiana, in accordance with the Constitution and laws of the United States, and of an act of the General Assembly, approved February 3, 1897, that you do arrest and secure said E. T. Kemper wherever found within this State, and forthwith bring him before a circuit or criminal judge of this State, or other proper authority, who may be nearest, or most convenient of access, to the place at which the arrest may be made, to the end that such judge may, by the examination of witnesses, be satisfied of the identity of the person so arrested, before ordering his delivery to the agent of the authority demanding him, and that he be then delivered to said agent for transportation to the state from which he fled. And for your doings in the premises this shall be your sufficient warrant when duly returned and filed in the office of the Secretary of State.

Given under the seal of the State, and the hand of the Governor, at Indianapolis, this third day of November, 1906.

[Seal.]                          J. Frank Hanly,

Governor of Indiana.

By the Governor.

Fred A. Sims, Secretary of State.''

To the third paragraph of return appellant filed his exception in the following terms:

''The petitioner herein, for exception to the third paragraph of the respondent's return, herein says that said paragraph does not state facts sufficient to constitute a defense to petitioner's writ.''

The exception was overruled, whereupon the petitioner

refused to plead further, and judgment was rendered against him, from which he appeals.

A person charged in any state with a crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from

1.   which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.   Constitution U. S., Art. 4, §2.

There is no doubt that appellant, as he contends, has the right to challenge the particular process employed against him, as not being "due process" within the meaning

2.   of the federal Constitution.   Pursuant to the constitutional provision above cited, congress enacted a statute, approved February 12, 1793, concerning fugitives from justice (1 Stat., p. 302, U. S. Comp. Stat. 1901, p. 3597, §5278), which is still in force, and, so far as material here, reads as follows: "That whenever the executive authority of any state   *   *   *   shall demand any person as a fugitive from justice, of the executive authority of any such state   *   *   *   to which such person shall have fled, and shall moreover produce the copy of an indictment   *   *   *   charging the person so demanded, with having committed   *   *   *   crime, certified as authentic by the governor   *   *   *   of the state   *   *   *   from whence the person so charged fled, it shall be the duty of the executive authority of the state   *   *   *   to which such person shall have fled, to cause him   *   *   *   to be arrested and secured   *   *   *   and cause the fugitive to be delivered to such agent when he shall appear." Responsive to these provisions our own legislature has enacted the following statute: "Upon the demand of the executive authority of any state or territory of the United States upon the Governor of this State, to surrender any fugitive from justice from such state or territory, pursuant to the Constitution and laws of the United States, he shall issue his warrant, reciting the fact of such demand, and the charge upon which it is based,

with the time and place of the alleged commission of the offense, directed generally to any sheriff or. constable of any county of this State, commanding him to apprehend such fugitive and bring him before the circuit, superior or criminal court or judge of this State nearest or most convenient of access to the place at which the arrest may be made," etc.   Acts 1905, p. 584, §26, §1893 Burns 1908, which is the same as Acts 1897, p. 38, §1, §1669 Burns 1901. Such court, if satisfied of the fugitive's identity, shall deliver him to the agent of the demanding state.

We are first met by appellee's insistence that the record in this case presents no question for decision, because the paper called an exception, filed by appellant, to the third paragraph of return to the writ, was, in fact, a demurrer, and not an exception; and, as a demurrer, it raised no question as to the sufficiency of said third paragraph.   It has been held that a demurrer was not a proper method of testing the sufficiency of the return to a writ of *habeas corpus*.   *Cunningham* v. *Thomas* (1865), 25 Ind. 171; *McGlennan* v. *Margowski* (1883), 90 Ind. 150; *Clayborn* v. *Thompkins* (1895), 141 Ind. 19, 22.   There exists no doubt that the proper way to challenge the sufficiency of a return is by exception.   The statute expressly so prescribes.   §1174 Burns 1908, §1117 R. S. 1881.

But the statute fails to point out whether an exception may be couched in general terms, or whether it shall be necessary for the petitioner to set forth in detail the particulars in which the return is insufficient to avoid the writ.   The language of the statute is: "The plaintiff may except to the sufficiency of   *   *   * the return," etc.   The paper here filed states that "the petitioner, for exception to the third paragraph of return, says that said paragraph does not state facts sufficient to constitute ·a defense to petitioner's writ."   Because the pleading is in the usual form of a demurrer does not make it a demurrer, nor impair its force as an exception.   It

denies in general terms the sufficiency of the return. If the denial was too general, too indefinite, it doubtless might have been made more certain on motion. In the absence of such motion we think the exception should be held sufficient on appeal. Besides, if the return was good, it can make no difference with appellant whether the test was brought about by an exception or a demurrer. At most, if by demurrer, it can do him no harm (*Sturgeon* v. *Gray* [1884], 96 Ind. 166), and where a right result has

5. been reached the judgment will not be disturbed because an inappropriate remedy was employed (*McGrew* v. *McCarthy* [1881], 78 Ind. 496).

Was the return sufficient? To justify an arrest on a requisition from a foreign state, it is essential that the warrant for arrest, issued by the Governor of this

6. State, recite the fact of the demand, and show that the prisoner has, by the demanding state, been charged with the commission of some crime against the laws of such state, by a regular course of judicial proceeding by an authority that had the right to try him, and show the time and place of the alleged commission of the crime. Acts 1897, p. 38, §1, §1669 Burns 1901; Acts 1905, p. 584, §26, §1893 Burns 1908; *Ex parte Morgan* (1883), 20 Fed. 298, 308; 2 Moore, Extradition, §§544, 546.

The act of congress (1 Stat., p. 302, *supra*) provides that whenever the governor of one state demands of the governor of another the return of a fugitive, and pro-

7. duces a copy of an indictment charging the person demanded with the commission of a crime, and which indictment is certified as authentic by the governor making the demand, "it shall be the duty" of the governor of the asylum state to cause the person charged to be arrested. It will be observed that under the act of congress the governor seeking the fugitive must not only make a demand for his return, but must also produce to the governor of the asylum state a copy of an indictment.

duly certified as authentic, charging the person demanded with a criminal offense. Section twenty-six of the act of 1905, *supra*, provides that upon the demand of the governor of another state upon the Governor of this State, "he shall issue his warrant, reciting the fact of such demand and the charge upon which it is based, with the time and place of the alleged commission of the offense." The return complained of shows that the requirements of both these statutes had been complied with. It is not required by either statute that our Governor shall make it appear in his warrant that a crime has been regularly and sufficiently charged against the person demanded by the laws and procedure of the demanding state, as urged by appellant. *In re Brown* (1873), 112 Mass. 409, 17 Am. Rep. 114; *People, ex rel.*, v. *Donohue* (1881), 84 N. Y. 438; *In re Hooper* (1881), 52 Wis. 699, 58 N. W. 741.

The demand, accompanied and supported by a duly authenticated copy of an indictment against the person demanded, fully authorized the Governor of this State 8. to issue his warrant for the arrest of appellant, and the reciting in such warrant that the arrest and return of the fugitive had been demanded upon a criminal charge fully set forth in the demand, and properly accredited, as appears in the return before us, was, at least, presumptive, or a *prima facie* showing that appellant was properly charged in Tennessee with a crime against the laws of that state. *Tullis* v. *Fleming* (1879), 69 Ind. 15, 17; *Robinson* v. *Flanders* (1867), 29 Ind. 10, 13; *In re Renshaw* (1904), 18 S. Dak. 32, 99 N. W. 83, 112 Am. St. 778; 21 Cyc. Law and Proc., 329.

So when the appellant was brought before the lower court for identification on the Governor's warrant, the papers lodged against him made out a *prima facie* case that 9. he was liable to a return to the state of Tennessee for trial, on the indictment set forth in the warrant and return. Appellant's exceptions to appellee's return chal-

lenged nothing but the regularity of the extradition proceedings. They being regular, as we have seen, the exceptions were properly overruled. Appellant having failed to plead over or deny the presumptive case against him, there was nothing left for the court to do but render judgment of return. Upon this point a well-known author says: ''The return to a writ of *habeas corpus* imports verity until it is impeached; and when made * * * by a public officer, in his official capacity, the facts therein stated will be taken as true, without reference to the allegations in the petition, unless an issue as to these facts is raised by an appropriate pleading on the part of the petitioner. This pleading is usually in the form of an answer denying the allegations of the return.'' Church, Habeas Corpus (2d ed.), §160. See, also, 21 Cyc. Law and Proc., 321, and cases collated. Any other holding would be without foundation. The return of the officer is in response to the command of the court to show cause why he restrains the prisoner of his liberty. The return is the officer's justification to the court. It has no relation to the facts averred in the petition for *habeas corpus*. Exceptions to the sufficiency of the return proceed upon the theory that the facts therein stated are true, and it is plain that, if the prisoner wishes to controvert such facts, he can do so only by laying a foundation. See authorities last-above cited. Appellant stood upon his exceptions to the return to the writ. There was no further pleading and no evidence, hence a proper ending of the case.

Lastly, appellant contends that the warrant of arrest issued by the Governor of this State does not properly recite the fact of such demand, nor the charge upon 10. which it is based, in that the time and place of the alleged commission of the crime show that the alleged offense was barred by the statutes of limitations. The demand is unequivocally declared, the charge upon which it is based is given by setting forth a complete copy of the indictment, which is clearly sufficient in form, and

the time and place of the commission of the offense are shown by the indictment, which is incorporated into the body of the warrant, and which shows that it was presented to the Shelby Criminal Court, of Tennessee, at the September term, 1906, to wit, on October 30, 1906, and charges that the grand jurors of the state of Tennessee, duly impaneled, sworn and charged to inquire in and for the body of the county of Shelby, in the state aforesaid, upon their oaths present that E. T. Kemper, late of said county, on the —— day of July, 1904, in the county aforesaid, did, etc.

11. This shows appellant's indictment, for an act alleged to have been unlawfully, feloniously, and fraudulently done, by a court having a grand jury and by a court of the county wherein it is charged the act was committed.

It is true, as claimed, that it affirmatively appears that the indictment was not presented within a period of two years from the alleged date of commission. But how did the trial judge know that the statute of limitation applicable to embezzlement charges was two years in Tennessee, and was not three years, or four years? The court was open to the prisoner, and if two years barred the prosecution against him in Tennessee we think it would have been the proper thing for him to set it up by way of answer to the return and prove it. The burden was on him to do so. *Barranger* v. *Baum* (1897), 103 Ga. 465, 30 S. E. 524, 68 Am. St. 113; *In re Renshaw, supra; State, ex rel.,* v. *Justus* (1901), 84 Minn. 237, 87 N. W. 770, 55 L. R. A. 325; *Hays* v. *Palmer* (1903), 21 App. Cas., D. C., 450; *Pearce* v. *Texas* (1894), 155 U. S. 311, 15 Sup. Ct. 116, 39 L. Ed. 164; *In re Van Sciever* (1894), 42 Neb. 772, 60 N. W. 1037, 47 Am. St. 730; 2 Moore, Extradition, §638. Besides, appellant alleges in his petition for the writ that he "is a citizen of Marion county, Indiana, and has resided in the State of Indiana continuously since July, 1904." The alleged crime was committed in July, 1904, and if he has been absent from Tennessee continuously since then to the time of his arrest

it is at least not probable that the statute was running in Tennessee during his absence from the state.

Appellant, also, asserts that his arrest was wrongful because the record discloses that the indictment purports to be authenticated by John L. Cox, as Governor of Tennessee; while, in fact, he asserts that said John L. Cox was elected Lieutenant Governor of said state, and his term of office has not expired, and he, therefore, could not exercise the executive authority of the state. It is not alleged, nor does it appear, that Cox was not, at the time he certified the indictment, acting as Governor of Tennessee, and, in the absence of words of negation, we must presume that he was so acting at the time.

We find no error in the record. Judgment affirmed.