JOHNSTON *v.* STATE OF INDIANA.

[No. 26,628. Filed June 1, 1937. Rehearing denied
September 20, 1937.]

Dailey, O'Neal, Dailey & Efroymson, Charles C. Benedict, and E. Ralph Himelick, for appellant.

Omer S. Jackson, Attorney-General, and Henry M. Dowling and Leroy C. Hanby, for the State.

FANSLER, C. J.—The appellee auditor of Fayette county, acting by virtue of section 64-1402 Burns Ann. St. 1933, section 15739 Baldwin's Ind. St. 1934, in July, 1932, placed upon the tax duplicate, and assessed against appellant as omitted property for the years 1920 to

1932, certain personal property consisting entirely of stocks in foreign corporations, and charged appellant with taxes thereon in the total amount of $37,771.75, and placed on the duplicate, as omitted property, stock in foreign corporations assessed at $297,500 for the year 1932, the rate for that year not having been fixed. Appellant objected, excepted, gave bond, and "appealed" from the finding and conclusion of the auditor under section 64-2103 Burns Ann. St. 1933, section 15804 Baldwin's Ind. St. 1934. The auditor filed with the clerk of the Fayette Circuit Court a transcript of the proceedings. Appellant filed an answer in abatement, to which a demurrer was sustained. She then filed an answer in four paragraphs, the first a general denial. A demurrer was sustained to the second, third, and fourth paragraphs. There was a trial upon the issues thus formed, special findings of fact and conclusions of law, and a judgment against plaintiff for $40,054.05.

Many errors are assigned, but, since the same questions arise under different assignments, all need not be considered.

Appellant, by verified motion conforming to the statute, asked for a change of venue from the county, which was denied. This ruling seems to have been upon the theory that the proceeding is not a civil action within the meaning of section 2-1401 Burns Ann. St. 1933, section 190 Baldwin's Ind. St. 1934, providing for changes of venue, but is a special statutory proceeding, and that in such proceedings there is no right to a change of venue from the county unless the right to the change is expressly given in the statute creating the proceeding. There may have been some confusion in the cases, arising out of a failure to distinguish between "civil cases" in which a jury trial can be demanded under the Constitution, which has been held to be that class of cases triable by a jury at common law, and

"civil cases," as defined in chapter 1 of our Civil Procedure Act (section 2-101 Burns Ann. St. 1933, section 14 Baldwin's Ind. St. 1934), which provides that there shall be but "one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a 'civil action'." The change of venue statute (section 2-1401 Burns 1933, §190 Baldwin's 1934, *supra*) provides that the court "shall change the venue of any civil action upon the application of either party." It must follow that any adversary proceeding involving the protection of private rights or the redress of private wrongs comes within the group designated as civil actions, and either party is entitled to a change of venue from the county, notwithstanding the proceeding is a special statutory one, unless there is a provision to the contrary in the statute providing for the proceeding. Thus it has been held that, where a statute creating a special proceeding provides that the proceeding shall be summary, the procedure governing ordinary civil actions does not apply, and a change of venue from the county may not be had. *Clarke* v. *City of Evansville* (1921), 75 Ind. App. 500, 131 N. E. 82; *State ex rel. Weatherholt* v. *Perry Circuit Court et al.* (1933), 204 Ind. 673, 185 N. E. 510. But it has long been recognized that, where the statute is silent on the subject of a change of venue, the mere fact that a proceeding is a special statutory one, does not preclude the right to a change. Changes of judge and changes of venue from the county are provided for in the same statute, and they may be had in any civil action, which, by the statutory definition, means any action for the enforcement or protection of private rights and the redress of private wrongs. See *State ex rel. Wheeler* v. *Leathers, Judge* (1925), 197 Ind. 97, 149 N. E. 900, and cases cited; Watson's Rev. of Works' Practice and Forms, §2. There is some language in

*Clarke* v. *City of Evansville, supra,* which seems to assume that only proceedings known to the common law are civil actions under our Code. But such a conclusion is contrary to the decisions of this court, as above indicated. It is well settled that, in so-called appeals from the orders of ministerial officers and boards, courts do not review the ministerial discretion, but are concerned only with judicial questions arising out of the exercise of ministerial functions, and that the provisions for appeal furnish only a method of procedure. The proceedings instituted under such procedure, where they affect private rights, must be deemed a civil action. The court erred in overruling appellant's motion for a change of venue from the county.

It appears from the fourth paragraph of answer, to which a demurrer was sustained, and by the evidence, and the special findings, that, on the 28th day of February, 1930, appellant assigned, transferred, and delivered certain stocks to the First National Bank of Cincinnati, Ohio, as trustee, with full power to exercise all of the legal rights of ownership therein for the benefit of the donor and her husband during their lives, and her daughters or their descendants thereafter. There is provision that the donor may at any time increase the principal of the trust by adding thereto other property and securities, and that all increases shall be held by the trustee under the same terms and conditions as the original trust property. The contract provides that during the lives of the donor and her husband the trustee shall first pay out of the net annual income the sum of $8,600 each year to the donor's husband, and the balance of the income to the donor; that in the event the donor survives her husband she shall receive the entire income of said estate during her life; that if the husband survives the donor he is to be paid one-third of the net income during his life, and one-third is to be paid to

each of appellant's daughters. At the death of both the donor and her husband the trust terminates, and the entire trust estate is to be distributed to the daughters, or their children, or their survivors. The contract was made in Ohio, and it is provided that the trust shall be governed by the laws of the state of Ohio, and that the trustee is to pay taxes on the trust property. The donor reserved the right to amend the terms of the trust agreement by supplemental agreement, or to cancel or revoke the trust agreement, but only upon the written and unanimous consent of the donor's husband and daughters and sons-in-law, or the survivors of them.

The court found in its conclusions of law that, by the assignment and delivery of the stocks referred to in this trust agreement, appellant was not divested of title to said stocks; that they continued to be owned by her as before. This conclusion seems to have been based upon the theory that the donor could cancel and revoke the trust agreement at any time by notifying the trustee. Appellees assert that the restriction upon appellant's right to revoke is illusory; that "it was a foregone conclusion that these five figureheads would consent, for they could gain nothing by their refusal"; that this renders the trust a nominal one, and preserved complete authority in the donor's hands, as if the trust had never been created; that the trust was "dry" or "passive". The certificates of stock were assigned and delivered, and the contract and assignments were sufficient to vest the legal title thereto in the trustee in Cincinnati, Ohio. Upon the delivery, the husband became vested with a right to receive an income of $8,600 per year from the proceeds of the trust, and the daughters became vested with a right to receive the property of the trust upon the death of the donor and her husband. To say that the restriction that any change in the agreement must be consented to by the

husband, daughters, and sons-in-law is merely illusory, is contrary to the very terms of the agreement, and it cannot be said as a matter of law, and there is no evidence to prove that it is a foregone conclusion, that the husband, and daughters, and sons-in-law would consent to a revocation of the trust and a return of the property to appellant. While they might gain nothing by their refusal, they might lose something by their consent. This personal property in her hands might be disposed of to strangers by gift or otherwise. It is not unusual for people of advanced age to establish trusts of personal property for the benefit of themselves and those who are the natural objects of their bounty, and it cannot be doubted that on some occasions such trusts are established in order to avoid the possibility that property may fall into strange hands. The husband and daughters surely had a substantial interest in preserving the trust, and how it can be determined, they not having acted, that they would as a matter of course acquiesce in its revocation is not apparent.

It is also contended by appellees that the trust agreement is void under section 56-620 Burns Ann. St. 1933, section 14753 Baldwin's Ind. St. 1934, which declares it to be unlawful "for any person, association or corporation to nominate or appoint any person a trustee in any deed, mortgage or other instrument in writing (except wills), for any purpose whatever, who shall not be, at the time, a bona fide resident of the state of Indiana." The act in question was held unconstitutional in *Roby, Trustee* v. *Smith et al.* (1892), 131 Ind. 342, 30 N. E. 1093, and if it was intended to prohibit a citizen of Indiana from delivering property to a trustee in Ohio, under a contract entered into in Ohio, for the benefit of himself and others, who are non-residents of the state of Indiana, its unconstitutionality can scarcely be questioned. Since, under

the contract, and by the delivery of the securities, title vested in the trustee in the state of Ohio, the property cannot be taxed in Indiana. The case of *Safe Deposit & Trust Co.* v. *Commonwealth of Virginia* (1929), 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, would seem to be controlling upon that question.

If the effort had been to tax the equitable interest of appellant in the property, and not the property itself, another question would be presented. By the plea in abatement it is made to appear that appellant's equitable interest in the trust was returned for taxation under the Intangibles Tax Law of 1933 (Acts 1933, ch. 81, p. 523), and the tax paid.

It is asserted that appellant parted with title to the property in question for the purpose of avoiding taxes, but, since appellant did in fact part with title and control of the property, as she had a legal right to do, her object or purpose is of no importance.

Since appellant had parted with title to the securities involved in the trust, in 1930, section 32 of the Intangibles Tax Law of 1933 has no application. The tax paid under the latter law was not upon the securities, since appellant did not own them, and therefore there can be no question of estoppel as against the taxing authorities. Title to the stock involved in the trust passed as of the 28th day of February, 1930. After that date it was not taxable in the state of Indiana in the name of appellant.

Concerning the value of the Champion Coated Paper Company stock prior to 1930, there is some evidence, and, while it may not be as satisfactory as might be desired, it is something upon which to base a value. Appellant might have introduced further evidence, possibly better evidence, of its value, had she so desired.

Appellant complains of the admission in evidence of

the depositions of two witnesses, who were not named in the notice to take depositions. Complaint is also made that there was not sufficient time between the notice and the time of taking the depositions to permit appellant to attend. Section 2-1514 Burns Ann. St. 1933, section 224 Baldwin's Ind. St. 1934, provides that the names of the witnesses whose depositions are inclosed shall be indorsed on the back of the envelope in which the depositions are transmitted to the clerk; and section 2-1522 Burns Ann. St. 1933, section 232 Baldwin's Ind. St. 1934, provides that all objections to the validity of any deposition, or its admissibility in evidence, shall be made before entering upon the trial, and not afterward. The only objection was made after the beginning of the trial. The depositions were on file before the trial, and were published on November 24, 1934. The trial, after some preliminary motions, was begun on November 26, 1934. It must be assumed that appellant had notice of the publication, or order of publication, before the depositions were published, and therefore opportunity to object to publication.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and to grant appellant's motion for a change of venue from the county, and for further proceedings not inconsistent herewith.

## On Petition for Rehearing.

Fansler, C. J.—Appellees, in support of their petition for rehearing, contend that the opinion in this case in effect overrules decisions accepted as the unquestioned law in this state, especially the case of *Shideler, Auditor* v. *Martin* (1922), 192 Ind. 574, 136 N. E. 1, 137 N. E. 528, and that if the latter case is not followed it should be expressly overruled.

It was thought that the Shideler case was not directly in point, since it deals with the right to appeal rather than with the right to a change of venue. But it does hold that a proceeding under the statute here involved is not a civil action, and to that extent clearly conflicts with the opinion in the instant case.

It is recognized in the Shideler case that, by the so-called "appeal" from the action of the auditor, that officer's ministerial discretion may not be reviewed, but that judicial questions affecting the legality of his action, or the statute under which he acted, may be considered by the court, and that such judicial questions "might have been brought before the court for determination by proper proceedings, even if there had been no statute authorizing an appeal." The entire effect of the provision of the statute providing for the "appeal" to the circuit court is therefore merely to provide a method of procedure by which the judicial questions sought to be raised may be brought before the court. If no such provisions were made by the statute, the action would be by complaint against the auditor seeking injunction or other equitable relief. It would be an adversary proceeding for the enforcement of private rights. It would not be a civil action in the sense that a trial by jury might be demanded, but it would be a civil action in the sense that a change of venue might be had, and an appeal might be taken to this court. It is said that an appeal from an assessment of omitted property lacks many of the features of a civil action. Those referred to are: "The lack of formal issues—indeed, of any pleading at all—and of adversary parties, in any proper sense of the term, and the summary character necessarily given to the proceeding by the manner in which the auditor makes his assessment, from which the appeal is taken, and the method of taking the appeal, all distinguished the case at bar from

those cited, and from other civil actions." But it will be noted that in claims against estates there are no formal issues and need be no pleadings at all. There are adversary parties and adverse interests. The taxpayer contends on the one hand that the assessment is illegal, and the auditor or other public officers contend for its legality, in the same manner and with the same adverse interests as though the statute did not exist and the questions were raised by an ordinary civil action. The manner in which the auditor makes his assessment has nothing to do with the character of the proceeding in court, except that it may affect the validity of the assessment. The method of taking the appeal by merely certifying the record is not unusual. A similar procedure will be found in the statutes governing proceedings to question the legality of the acts of other ministerial officers and boards. It cannot be questioned that the proceeding is an action by the taxpayer for the protection of his rights and his property against what he contends is illegal action upon the part of the officers representing the sovereign. At common law he had the right to have the courts pass upon the legality of such actions. Under the Constitution he has recourse to the courts to protect his property against unlawful seizure. It may well be doubted whether the Legislature can deprive him of the right to maintain such an action. It must not be assumed that the Legislature intended to do so when it merely provided a simple and expeditious procedure by which he might bring such judicial questions before the court. The fact that the court confused civil actions in which an appeal might be taken, and civil actions in which a jury trial might be demanded, is disclosed by the statement that: "The logic which would lead to the conclusion that an appeal may be taken under the general provisions of the Civil Code would show the parties entitled to a jury trial." The

fallacy of this conclusion is too obvious to require discussion.

Shortly after the Shideler case was decided, the statute was amended to permit the appeal which the decision denied, thus indicating a legislative desire and intention that there should be the same right to appeal as in other civil actions. There is nothing to indicate a legislative intention to deny the right to a change of venue, or do anything more than provide procedure for this particular kind of action.

The case of *Shideler, Auditor,* v. *Martin, supra,* in so far as it is in conflict with the opinion in the instant case, is overruled.

The other cases relied on by appellees involve habeas corpus proceedings, the attachment of a witness for contempt in refusing to obey the process of the court, and interlocutory proceedings, all of which are summary in character and readily distinguishable from ordinary civil actions.

Petition for rehearing denied.