DOWD v. HARMON.

[No. 28,606. Filed March 1, 1951. Rehearing denied April 4, 1951.]

*J. Emmett McManamon,* Attorney General; *Merl M. Wall, Charles F. O'Connor* and *Norman J. Beatty,* Deputy Attorneys General, for appellant.

*James C. Cooper,* Public Defender, and *John B. Dilworth,* of LaPorte, for appellee.

JASPER, J.—Appellee filed his verified petition for a writ of habeas corpus, contending that he was being illegally held by appellant as Warden of the Indiana Hospital for Insane Criminals. Appellant, prior to filing his return and answer, filed a verified motion for a change of judge, which was denied. Thereafter an amended return and answer was filed, to which appellee filed his exceptions. The exceptions were sustained, and appellant refused to plead further. Judgment was entered by the court ordering the release of appellee and his delivery to the custody of the Superintendent of the Indiana Village for Epileptics.

The pleadings show that appellee was committed to the Indiana Village for Epileptics, at New Castle, in January, 1946. On May 7, 1949, the Indiana Council for Mental Health issued an order transferring appellee to the custody of the Board of Trustees of the Indiana Hospital for Insane Criminals. The order was signed by the Acting Director.

Appellee asserts, in substance, that he is not a criminal and has never been convicted of a crime; that he is not an insane person, and no court of competent jurisdiction has ever committed him to the Indiana Hospital for Insane Criminals; and, further, that there is no showing that he has ever been committed to any institution, or that the Indiana Council for Mental Health has ever ordered or authorized the transfer or commitment of appellee, and that the Acting Director had no authority to do so.

Appellant first contends that the court committed error in its failure to grant his verified motion for a change of judge. It is admitted by appellee that the verified motion was in proper form and duly filed. This court has held that when an affidavit for a change of judge is timely and properly filed, based on bias and prejudice of the judge, the trial

court has no discretion in the matter. In examining and granting or refusing to grant such a change in a cause where a change is permitted by law, the judge acts in a ministerial way, and if the affidavit is sufficient the change must be granted. *State ex rel. Ballard* v. *Jefferson Cir. Ct.* (1947), 225 Ind. 174, 73 N. E. 2d 489. This court has further held that after a proper and sufficient verified motion for a change of judge is filed, the court has no jurisdiction to consider any matter involved in the case. *State ex rel. Ballard* v. *Jefferson Cir. Ct., supra.*

Appellee asserts in his brief that appellant waived all right to claim error for the failure of the trial court to grant the change of judge for the reason that appellant failed to invoke the original jurisdiction of this court to grant a writ of mandate. In *State ex rel. Williams Coal Co.* v. *Duncan, Judge* (1937), 211 Ind. 203, 207, 6 N. E. 2d 342, 344, this court said:

> ". . . if the ruling on the original motion denying the change was erroneous, and objection and exception reserved to the ruling, it would require a reversal of a judgment against relator upon appeal to this court after a trial upon the merits, even though no error were committed on the trial. The right to a change of venue was not waived by a failure to apply to this court for a writ of mandate."

The appellant now before this court did not waive his right to a change of judge.

Appellee further asserts that appellant is not entitled to a change of judge in a habeas corpus action. This court, in *Allen* v. *Fayette Circuit Court* (1948), 226 Ind. 432, 436, 81 N. E. 2d 683, 684, decided the question as to the right of a change of judge in a habeas corpus proceeding. It was held

that a habeas corpus proceeding is in its nature a civil rather than a criminal proceeding, and comes within § 2-1402, Burns' 1946 Replacement. The court said:

> "The petition for writ of habeas corpus presents a 'matter of a civil . . . nature not triable by a jury,' even though the remedy is summary (§ 3-1917, Burns' 1946 Replacement; Acts 1881, Spec. Sess., ch. 38, § 789, p. 240), and special in character, so that it is not a 'civil action' under § 2-1401, Burns' 1946 Replacement (Acts 1881, Spec. Sess., ch. 38, § 255, p. 240), and as such not being subject to a verified motion for a change of venue from the county. *Johnston* v. *State* (1937), 212 Ind. 375, 8 N. E. 2d 590, 10 N. E. 2d 40. We are of the opinion the change of venue from the judge may be had under § 2-1402, Burns' 1946 Replacement, in a proceeding for a writ of habeas corpus."

We reiterate the above. It was prejudicial error for the trial court to refuse to grant the change of judge.

Appellant, under his second assignment of error, contends that the court committed error in sustaining appellee's exceptions to appellant's amended return and answer. Since the same question will again be presented to the trial court, this court will rule on this assignment of error. Exceptions filed in a habeas corpus proceeding test the sufficiency of the return and answer. Exceptions have the same effect as a demurrer to a complaint. Section 3-1915, Burns' 1946 Replacement; *Dowd, Warden* v. *Johnston* (1943), 221 Ind. 398, 47 N. E. 2d 976; *Kemper* v. *Metzger* (1907), 169 Ind. 112, 119, 81 N. E. 663. To determine whether or not the court committed error in sustaining the exceptions, it is necessary to construe chapter 335 of the Acts of 1945 (Acts 1945, p. 1569; § 22-4201 et seq., Burns' 1950 Replacement), and

all other laws relating thereto. *Dowd, Warden* v. *Johnston, supra.*

Appellee contends that the title of chapter 335 of the Acts of 1945 is not broad enough to give to the Indiana Council for Mental Health the right to transfer patients from one institution to another or from one hospital to another. The last-cited title reads as follows:

> "An Act Concerning Mental Cases, Creating the Indiana Council for Mental Health and prescribing its Powers and Duties, Authorizing the Construction of a Hospital, Providing for Admission Thereto and Release Therefrom and Making an Appropriation, and Providing for Enforcement."

The title covers a general subject—"An Act Concerning Mental Cases, Creating the Indiana Council for Mental Health and Prescribing its Powers and Duties." The title need not contain an index or abstract of the act. *DeHaven* v. *Municipal City of South Bend* (1937), 212 Ind. 194, 7 N. E. 2d 184; *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 168, 74 N. E. 985. The title is broad and general enough to include the subject of the transfer of psychiatric patients from one hospital to another or from one institution to another. *Barber Grocery Co., Inc., et al.* v. *Fleming, etc., et al.* (1951), 229 Ind. 140, 96 N. E. 2d 108. The title of this act is not in violation of Art. 4, § 19, of our State Constitution.

Does chapter 335 of the Acts of 1945 vest in the Indiana Council for Mental Health the right to transfer a patient from the Indiana Village for Epileptics to the Indiana Hospital for Insane Criminals? It is to be noted in appellee's petition for habeas corpus that appellee was admitted to the Indiana Village for Epileptics in January, 1946, for treatment. From the petition and the answer and return it is shown that appellee was admitted to the Indiana Village for

Epileptics, as provided under § 22-2012, Burns' 1950 Replacement, which provides for a hearing before a judge of a circuit court, and for the entering of an order of commitment if it shall appear to the judge that the person is afflicted with epilepsy. This having been done, appellee became a ward of the State of Indiana; and, as provided in § 22-2017, Burns' 1950 Replacement:

"All persons admitted to the institution shall, until properly discharged from said institution, be under the custody and control of the superintendent. . . ."

It is further provided, under § 22-2018, Burns' 1950 Replacement:

"No person shall be discharged from the said village for epileptics until, in the judgment of the superintendent, the mental and physical condition of the patient justifies it."

The powers and duties of the Indiana Council for Mental Health are defined in chapter 335 of the Acts of 1945, as amended by chapter 67 of the Acts of 1947 (Acts 1947, § 1, p. 215), being § 22-4202, Burns' 1950 Replacement. Subsection (2) of the last-cited act defines the term "psychiatric patient," and provides that the Council is:

"To have general supervision of the treatment and care of patients in all *public institutions* for the diagnosis, treatment and care of psychiatric patients. The term 'psychiatric patient' as used in this act means any person suffering from psychiatric disorders, mental retardation, *convulsive disturbances*, or any abnormal mental condition." (Emphasis supplied.)

It is further provided by subsection (6) of the last-cited act that the Council shall have the power and duty:

"To transfer psychiatric patients in state hospitals and institutions for the care of such patients, from one such hospital or institution to another."

In the action before this court, the appellee comes within the definition of a psychiatric patient.[1] The Legislature gave to the Indiana Council for Mental Health the broad powers of transferring psychiatric patients in state hospitals and institutions from one such hospital or institution to another. Therefore, if appellee was properly transferred from the Indiana Village for Epileptics to the Indiana Hospital for Insane Criminals, it was done with legislative authority. The amended return and answer of appellant sets out that appellee was transferred from the Indiana Village for Epileptics by virtue of a transfer order dated May 7, 1949, issued by the Indiana Council for Mental Health. The transfer was executed for and on behalf of the Council by its Acting Director, under the seal of the Council. On its face, this transfer meets the requirements of the statute, and it was not necessary to allege in the return and answer that the Acting Director had authority to execute this transfer for and on behalf of the Council.

Appellee, in his brief, contends that the Indiana Hospital for Insane Criminals is a penal institution, created by chapter 87 of the Acts of 1909 (Acts 1909, p. 202; § 13-301 *et seq.*, Burns' 1942 Replacement). This last-cited statute creates a hospital for the treatment of insane criminals to be erected on land belonging to the State and set apart for the use of the Indiana State Prison. The Legis-

---

[1] See 2 Gray's Attorneys' Textbook of *Medicine* (Epilepsy), 3rd Ed., p. 1046, and Herzog *Medical Jurisprudence* (Epilepsy).

lature had a right to authorize the transfer of psychiatric patients to the Indiana Hospital for Insane Criminals, or authorize the use of this hospital for other patients or other purposes. The Legislature created the Indiana Hospital for Insane Criminals as a hospital, and we cannot presume that the persons charged with the care of patients committed to this hospital will not carry out their duties. It is presumed that a public administrator acts in good faith, with honest motives, for the purpose of promoting the public good and protecting the public interest. We presume therefore that the officials of the Indiana Hospital for Insane Criminals are carrying out their duties for the good of the public and the good of the patients until the contrary is shown.

Appellee further argues that his transfer was in violation of due process. This was not a violation of either the Constitution of Indiana or the Federal Constitution. Due process was afforded to appellee at the time he was committed to the Indiana Village for Epileptics. If the Indiana Council for Mental Health determines that a psychiatric patient can best be treated by being transferred to the Indiana Hospital for Insane Criminals, the transfer is not in violation of due process, since the transfer is an administrative and discretionary act authorized by the Legislature.[2] The transfer does not make appellee a criminal, nor subject to confinement as a criminal, but, as a psychiatric patient, he is transferred for the benefit of himself and the public.

It was error for the court to sustain the exceptions.

[2] See *Cushman* v. *Hussey* (1918), 187 Ind. 228, 118 N. E. 816, and *Board of Com'rs of Dearborn County* v. *Droege* (1946), 224 Ind. 446, 68 N. E. 2d 650.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

Gilkison, J., concurs in part and dissents in part.

## DISSENTING OPINION

GILKISON, J.—I concur in the opinion in so far as it holds that either party to the action is entitled to a change of judge upon proper application therefor, timely filed and presented. A denial of this right to appellant by the trial court constitutes reversible error, which may properly be presented on appeal.

I also concur in the opinion that the proper authorities may transfer an epileptic patient from the Indiana Village for Epileptics to another *benevolent* institution should occasion require but I rather violently disagree with the opinion that such a patient may be transferred from one institution to another when the institution to which the patient is so transferred is a *penal* institution.

Epilepsy is not a crime. On the contrary it is a disease with which many excellent people are affected. Many persons so affected are never hospitalized but continue to live and work in their respective field notwithstanding their affliction. Ancient instances of these are Saul, first King of Israel, and Julius Caesar. Our state determined to establish the Epileptic Village in 1905; the purpose of the institution is expressed in Section 1 of the Act as follows:

"There shall be established in this state a village for epileptics, the object of which shall be the scientific treatment, education, employment and custody of epileptics, and which shall be known as the Indiana village for epileptics. In the establishment of this institution, the general assembly recognizes the duty of the state to provide proper care for such of its citizens as are, or may become,

affected with the disease of epilepsy. [Acts 1905, Ch. 159, § 1, p. 483]." § 22-2001, Burns' 1950 Replacement.

As shown by this statute the purpose of the establishment of the Epileptic Village is, "the scientific treatment, education, employment and custody of epileptics, . . ." These are wholly benevolent purposes— they are not penal. The ancient idea that an epileptic patient is possessed of a devil, and the treatment prescribed that it must be beaten out of him, ceased to exist long ago. I do not think it is advisable to revive it now.

The Master Christian's position with respect to epileptics is well expressed by his first disciple thus:

> "And the report of him went forth into all Syria; and they brought unto him all that were sick, holden with divers diseases and torments, possessed with devils, and epileptic, and palsied; and he healed them." Matthew 4-24—Holman's Teacher's Bible Revision of 1898.

This, I think, expresses the Christian thought. It was the evident intent of the Legislature to carry out this thought when it established the Indiana Village for Epileptics. It is an important duty of every department of government in the state and nation to see that this intent is not destroyed by erroneous rulings of administrative officers, and erroneous constructions by courts.

In 1909 our state established the "hospital for insane criminals." The title of the Act is as follows:

> "AN ACT authorizing and providing for the establishment of a 'hospital for insane criminals' as a part of the 'Indiana state prison,' making appropriations therefor, providing for its government and maintenance, defining the manner of holding insanity inquests in cases of convicts al-

leged to be insane and for their transfer and discharge, repealing all laws in conflict and declaring an emergency." [Acts 1909, Ch. 87, p. 202].

The purpose of the institution is expressed in §§ 1, 2, 3, 4 and 5 of the Act as follows:

"Section 1. *Be it enacted by the general assembly of the State of Indiana,* That there be and hereby is established as hereinafter provided, a hospital for the care and treatment of male insane criminals which shall be known as the 'Indiana hospital for insane criminals.' (§ 13-301, Burns' 1942 Replacement).

"Sec. 2. That the said 'Indiana hospital for insane criminals' shall be a part of the Indiana state prison located at Michigan City, Indiana, and shall be under the management of the board of trustees and warden of said Indiana state prison, and shall be governed by such rules and regulations, within the provisions of this act, as said board of trustees may adopt. (§ 13-302, Burns' 1942 Replacement).

"Sec. 3. That the said board of trustees is hereby directed to select a suitable site on land now belonging to the state and set apart for the use of said Indiana state prison, and proceed to erect and equip thereon, according to such plans as it may adopt, suitable and substantial buildings and necessary appurtenances with an available capacity of not less than one hundred and forty-five (145) beds. Said structures must be sanitary, fire-proof and embody both prison and hospital features as far as practical and suitable for the care and proper treatment of insane criminals. (§ 13-303, Burns' 1942 Replacement).

"Sec. 4. That for the purpose of carrying out the provisions of this act there be and hereby is appropriated out of any available funds in the state treasury the sum of sixty-five thousand ($65000)) dollars, or so much thereof as may be necessary, the same to be available from the day of the taking effect of this act to September 30th, 1910, when any unexpended balance shall revert to the general fund of the state treasury. The popu-

lation of said 'Indiana hospital for insane criminals' shall be considered as part of the population of the Indiana state prison and shall be maintained out of the funds appropriated for the Indiana state prison. All of said moneys may be drawn by the board of trustees on requisition on the auditor of state in the same manner as is by law required in the settlement and payment of other accounts of the Indiana state prison. (§ 13-304, Burns' 1942 Replacement).

"Sec. 5. The warden of the Indiana state prison shall exercise the same supervision and authority over the said 'Indiana hospital for insane criminals,' its appurtenances and its entire population and shall have the same power of employment and discharge of all persons employed therein, as the law now confers upon him with relation to the Indiana state prison. The board of trustees of the Indiana state prison shall have the same authority over said Indiana hospital for insane criminals as it now has by law over said Indiana state prison and shall be clothed with the same powers and governed by the same regulations as to their methods of business as are now fixed by statute for the direction and control of the board of trustees of the Indiana state prison, except as hereinafter provided." (§ 13-305, Burns' 1942 Replacement).

From these sections of the statute it is apparent that the Indiana hospital for insane criminals is but a part of the Indiana State Prison. No one will say that a prison is a benevolent institution. Persons are committed to that institution only for the "punishment of crimes, whereof the party shall have been duly convicted." Art. 1, § 37, Indiana Constitution.

From the benevolent purposes of the Indiana Village for Epileptics to the penal purposes of the Indiana hospital for insane criminals is a lengthy step indeed, and transfer of epileptic patients from the former to be prisoners in the latter can be made lawfully only

in the manner and form as provided by the Constitution and laws of the State. The State Constitution provides:

"There shall be neither slavery, nor involuntary servitude, within the State, otherwise than for the punishment of crimes, whereof the party shall have been duly convicted. . . ." Art. 1, § 37.

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. . . ." Art. 1, § 12.

"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Art. 1, § 13.

". . . . No person, in any criminal prosecution, shall be compelled to testify against himself." Art. 1, § 14.

One who is sent to the Indiana Village for Epileptics loses none of his rights to life, liberty and the pursuit of happiness declared by our constitution; he retains all these rights, and because of his disease he gets the additional right of "scientific treatment, education, employment and custody." The right of custody granted is not unlimited. It must be reasonably exercised to accomplish the purposes designed, which are *treatment, education, and employment.*

The declared rights under the Indiana Constitution heretofore noted, and the rights of all persons under Section 1, Amendment 14 of the United States Constitution as follows:

". . . . No state shall make or enforce any law which shall abridge the privileges or immunities

of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

are absolutely binding upon each department of our state government. These rights must be upheld with complete impartiality with respect to epileptics.

A statute in Indiana, which the opinion does not mention but which is the basis for the transfer of appellee to the state prison, provides:

"An inmate, being a male adult, of a hospital for the insane, the Indiana Village for Epileptics, school for feeble-minded youth, or the Indiana Colony for Feeble-Minded, on account of homicidal and criminalistic habits and tendencies to a degree requiring prison surroundings and protection of life or property, may be transferred to the Indiana Hospital for Insane Criminals at Michigan City by the mutual understanding and consent of the warden and superintendent of the respective institutions, and with the approval of the governor, and not otherwise. Whenever, in the judgment of the physician in charge, an inmate so transferred shall have recovered his sanity, and may properly and safely be permitted to return to his home and place of legal settlement, the physician in charge shall certify the fact to the warden, who shall discharge him as the law provides for the discharge of other recovered inmates of the hospital for insane criminals. The expense of such a transfer to the Indiana Hospital for Insane Criminals shall be paid by the institution making the transfer." § 22-306, Burns' 1950 Replacement.

By this statute an attempt is made to authorize transferring patients from the benevolent institutions named therein to the Indiana State Prison, under the name "Indiana Hospital for Insane Criminals at Michigan City." It seeks to justify this action by the hocus pocus proceedings named in the statute quoted. I am

aware that any person may be sent to the state prison, when he has been properly charged with the commission of a specific crime in a court of competent jurisdiction, has had a fair trial agreeable with the constitutions of the state and nation, and has been found and adjudged guilty, and sentenced agreeable with the law. But no man may ever be sent to the Indiana State Prison "on account of homicidal and criminalistic habits and tendencies to a degree requiring prison surroundings and protection of life or property," as stated in this statute. The proceeding by which this unlawful result is accomplished is remarkable because of its simplicity. It is accomplished "by the mutual understanding and consent of the warden and superintendent of the respective institutions, and with the approval of the governor, and not otherwise." In this manner the statute noted seeks to destroy appellee's Creator given, constitutionally guaranteed natural rights to life, liberty and the pursuit of happiness. But our constitutions are the supreme law of the state, binding alike upon governors, legislatures, courts and the people and the statute involved is clearly unconstitutional and void, being in contravention of § 1 of the Fourteenth Amendment of the United States Constitution and of §§ 37, 12, 13 and 14, Art. 1 of the Constitution of Indiana hereinbefore noted.

The opinion is in error in stating that "appellee became a ward of the state of Indiana;" on the contrary he became a patient of the state to receive "scientific treatment, education and employment." For these ends only the state is given his custody. Under the constitutions of the state and nation it may not abuse this right of custody, or use it for any purposes whatever other than those specifically named in the statute —as last above noted.

It is quite erroneous to say that the necessary legal process to qualify one suffering from epilepsy to secure the benevolent and beneficial "scientific treatment, education, employment and custody" provided by the state for its unfortunate epileptics, is the same due process that the state must take in order to take away the natural liberties of an individual and confine him in the State Prison. It is extremely difficult to follow the reasoning that reaches such a result. To me the process of reasoning necessarily followed is intellectually immoral and I am wholly unable to agree thereto.

The appellee in this case is not a criminal. So far as shown by the record he has never been charged with the commission of a crime. He has had no trial before either court or jury and of course, no judgment has been rendered against him. The order of court committing him to the Indiana Village for Epileptics is not a criminal judgment, and it, in no manner, authorizes any administrative officer or court to sentence him to the State Prison. Any such action by any such administrative officers or courts is a direct violation of appellee's rights under the State and Federal Constitutions heretofore noted.

The opinion attempts a construction of Chapter 335, Acts 1945 as amended by Chapter 67, Acts 1947, being § 22-4202, Burns' 1950 Replacement. Section 2, Cl. 6 of this statute gives the Indiana Council for Mental Health authority "to transfer psychiatric patients in state hospitals and institutions for the care of such patients, from one such hospital or institution to another." There is nothing in this act even indicating any intent on the part of the legislature to authorize the transfer of such patients from the benevolent care of such hospitals to the penal care of the prisons. If this statute attempted to authorize such a transfer

it would be a contravention of the constitutions noted and therefore void. However, by the peculiar reasoning of the opinion, this statute is said to authorize such a transfer. I think the opinion thus does the statute an injustice. It is the opinion that seeks to authorize such a transfer, not the statute, and so it is the opinion that violates the constitutions of both the state and the nation—not the statute.

Until the opinion in the instant case it has always been the law in Indiana, that:

> "In construing a statute it is necessary to consider the whole act and all other law relating thereto, and, if possible, give effect to it in all its parts. *Huff* v. *Fetch* (1924), 194 Ind. 570, 143 N. E. 705.

> "Furthermore that construction should be favored which grants equality of rights and which is against restrictions of liberty. *Helms* v. *American Security Co.* (1939), 216 Ind. 1, 6, 22 N. E. (2d) 822, 824; *In re Petition of Leach, Ex Parte* (1893), 134 Ind. 665, 671, 34 N. E. 641, 642, 21 L. R. A. 701, 706." *Dowd, Warden* v. *Johnston* (1943), 221 Ind. 398, 401, 402, 47 N. E. 2d 976; *Lee* v. *Burns* (1932), 94 Ind. App. 676, 679, 182 N. E. 277; *Willis* v. *Bayles* (1886), 105 Ind. 363, 370, 5 N. E. 8.

> ". . . all statutes are to be construed as far as possible in favor of equality of rights and all restrictions on human liberty and all claims for special privileges are to be regarded as having the presumption of law against them." *Lee* v. *Burns* (1932), 94 Ind. App. 676, 679, *supra; In. Re Petition of Leach, Ex Parte* (1893), 134 Ind. 665, 671, 34 N. E. 641, 642, *supra*.

The opinion ignores the clear and unambiguous terms of the statute creating the Hospital for Insane Criminals—the title of five sections of which are quoted in full in this dissent. The opinion takes the position that because it is called a "hospital" the court may ignore the qualifying words "for insane criminals" and

allow any epileptic to be sent to that so-called hospital, notwithstanding the fact that the constitutions of the state and nation forbid such action. I am unable to follow this reasoning.

We may not by a pretended construction legislate something into the statute that the legislature withheld therefrom. An old but thoroughly dependable rule of statutory construction is as follows:

"In the interpretation of statutes, if the words used express clearly the sense and intention of the law, they must always govern. For as we have seen, it is not permitted to interpret what is plain and manifest, as it stands in no need of interpretation. When an act is conceived in clear and precise terms—when the sense is manifest, and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents to the mind." *Garrigus* v. *The Board of Commissioners of Parke County* (1872), 39 Ind. 66, 70.

The opinion seems to violate all the rules of construction noted to accomplish a direct violation of appellee's natural rights to life, liberty and the pursuit of happiness and to deny him the due course of law and due process of law guaranteed him by the state and national constitutions. Since appellee is but one of many Indiana epileptics, who by the same unlawful process without trial and without even a pretense of guilt have been dumped into the State Prison Hospital for Criminal Insane, not for treatment but merely for permanent custody, it is to be hoped that relief for these unfortunates may be found.

On this feature of the case, I think the judgment of the trial court is correct.

NOTE.—Reported in 96 N. E. 2d 902.